SIXTH DIVISION
AUGUST 13. 2010

No. 1-08-2891

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 15120 |
| | ) | |
| ANTONIO RAYMOND, | ) | Honorable |
| | ) | Diane Cannon, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Following a jury trial, defendant Antonio Raymond (defendant) was convicted of predatory criminal sexual assault of a child. After considering evidence in aggravation and mitigation, the trial court sentenced him to 20 years' imprisonment. Defendant's motion to reconsider the sentence was denied, and defendant filed this timely appeal. On appeal, defendant argues that his conviction should be reversed because the State failed to prove the element of penetration beyond a reasonable doubt. Defendant further raises several arguments for a new trial: (1) that the trial court denied defendant a fair trial by refusing to allow him to argue mistake of age as a defense; (2) that the trial court erred in allowing evidence concerning defendant's prior conviction for aggravated criminal sexual abuse; (3) that the trial court violated Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007) during jury selection by not inquiring into all of the *Zehr* factors (*People v. Zehr*, 103 Ill. 2d 472, 477 (1984)); and (4) that the State inflamed jurors' passions through improper remarks during closing argument and rebuttal, thereby preventing defendant from receiving a fair trial. Finally, defendant asks for a reduced sentence because he claims that his sentence was excessive. We affirm.

BACKGROUND

On June 7, 2006, 23-year-old defendant Antonio Raymond was arrested when police officers entered a house in which they discovered defendant and 12-year-old KS (victim) on a bed, both naked from the waist down. Defendant was charged with predatory criminal sexual assault of a child. 720 ILCS 5/12-14.1(a)(1) (West 2008).

Prior to trial, the State moved *in limine* to bar defendant from referencing his belief that the victim was over the age of 17, arguing that mistake of age was not a valid defense to the charge of predatory criminal sexual assault of a child. Defendant responded that the victim told police that she was 19 and later changed her stated age to 15; one officer's arrest report stated that defendant told police that "[s]he told me she was nineteen years old." Defendant argued that the victim's statements as to her age were relevant to her credibility. The trial court granted the State's motion and denied defendant the use of a mistake of age defense.

Additionally, the State moved *in limine* for the trial court to allow other crimes evidence concerning defendant's prior conviction for aggravated criminal sexual abuse of a victim named JP, as well as evidence of an alleged sexual assault against a woman named SM. As part of its argument against the admission of the other crimes evidence, the defense stated that the victim in the case at bar had told defendant that the house in which they were discovered belonged to her cousin.[1] The trial court granted the State's motion regarding both JP and SM. In allowing the

---

[1] In its response to the State's motion, the defense stated that the victim claimed that she resided in the house. The statements that the victim made to defendant or to police were not discussed during the trial.

other crimes evidence, the court stated that "[t]he Court has reviewed the motion, considered the arguments, response to the motion, considered the case law, specifically Donahue, considered the federal rules of evidence, specifically 413, and United States versus Withorn, cited at 204 F 3d 790, Eighth Circuit Court case in 2000, allowing prior sexual assaults to prove a defendant's propensity to rape teenage girls and then possibly claim that they have consented." The trial court then found that "the four years for three separate sexual assaults is, in fact, close in time. All of the incidents occurred in locations where, I guess, we could say normally consensual sex does not occur; a vehicle, a shed, and an abandoned home." The trial court ruled: "The Court has weighed the probative versus the prejudicial value and finds that the prior sexual assaults which occurred within four years are admissible." However, later the trial court granted defendant's motion to reconsider with regard to SM.

Jury selection for the trial began on September 9, 2008. The trial court read the charges to the entire *venire* and cautioned that the grand jury indictment was not evidence against defendant. The court then informed the jury that defendant was presumed innocent, that the State had the burden of proving defendant guilty beyond a reasonable doubt, and that defendant was not required to prove his innocence.

The trial court then called a group of 14 prospective jurors from the venire for further questioning. When the trial court addressed the group, the court stated: "The Defendant as I stated is not required to prove his innocence. He has a right to testify. He has a right to remain silent. Should he exercise this right to remain silent and not testify, is there anybody who would hold that against him? No response." The court continued: "The State has the burden of proving

3

the Defendant guilty beyond a reasonable doubt. Should the State meet their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go into the jury room with your fellow jurors and the law that governs this case as I give it to you and sign a verdict form of guilty. Anybody who could not or would not do that for any reason? No response." The court concluded: "Should the state fail to meet their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go into the jury room with your fellow jurors and sign a verdict form of not guilty? No response."

The trial court then further questioned the prospective jurors individually, after which the parties excused seven jurors on peremptory challenges or for cause and retained the rest, placing them in the jury room. The trial court then called a second group of 14 prospective jurors from the *venire*. The trial judge gave similar instructions to the second group:

> "The Defendant Mr. Raymond is presumed innocent of the
> charges against him. The State has the burden of proving him
> guilty beyond a reasonable doubt. He is not required to prove his
> innocence. He is not required to testify. He choose not to testify,
> is there anybody seated in the jury box who would hold that against
> him? No response.
>
> If the State meets that burden of proof beyond a reasonable
> doubt, is there anybody seated in the jury box who could not or
> would not go into the jury room with your fellow jurors and the
> law that governs this case as I give it to you and sign a verdict form

4

of guilty? Anybody who could not or would not do that for any reason? No response.

Should the State fail to meet their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go into the jury room with your fellow jurors and the law that governs this case as I give it to you and sign a verdict form of not guilty? No response."

Again, the trial court then questioned the prospective jurors individually. The parties excused an additional 7 prospective jurors by peremptory challenges or for cause, leaving a total of 12 sworn jurors and 2 sworn alternates.

Defendant's trial began on September 9, 2008. During the State's case in chief, Chicago police department officers John Beluso and John Tait[2] testified as to the events that occurred on June 7, 2006. Officer Beluso testified that he and his partner were called to a two-story house on South Ingleside Avenue concerning a reported criminal trespass in progress. They were met at the building by Officer Tait and two other officers. When the police officers arrived, the front door was partially open and the officers entered the building.

Officer Beluso described the house as "abandoned," testifying that "it was dirty. There was clothes everywhere. It's obviously that no one lived there"; Officer Tait also described the

---

[2] Officer Tait's name is spelled in a number of ways throughout the parties' briefs and the record. For the sake of consistency, we will adopt the spelling "Tait."

building as "an abandoned house." Officer Tait testified that when he entered the house, he saw litter throughout the house and that the house "[s]melled pretty bad."

Officer Tait then testified that, shortly after entering, he heard "movement" and "shuffling" coming from the second floor, which began to resemble squeaking sounds, and the officers went upstairs. Once at the top of the stairs, Officer Tait determined that the sounds were coming from a bedroom and the officers proceeded to the bedroom, which Officer Tait testified had no door. Once at the bedroom, Officer Tait stood in the doorway while Officer Beluso stood behind him. Officer Tait testified that he had an unobstructed view into the bedroom and saw two individuals, who he identified as defendant and the victim, on a bed approximately five to seven feet away. Officer Tait testified that the victim looked "young, like [a] teenager."

Officer Tait then entered the bedroom, where he heard grunting noises coming from defendant and the victim, and noticed that both were naked from the waist down. The victim was lying on her back, with her arms around defendant's back and her legs "[s]pread wide open." Defendant was lying on top of the victim's pelvic area, their hips were touching, and his legs were between hers. Defendant's buttocks were "moving up and down" in what Officer Tait described as a "humping fashion." Officer Tait testified that he observed them for a second or two and his first impression was "[t]hat they were having intercourse." Officer Tait ordered defendant to stand up, and when he did, Officer Tait noticed that defendant's penis was wet and erect. Officer Tait then arrested defendant, charging him with criminal trespass to land.

On cross-examination, Officer Tait admitted that his supplemental report failed to state some of the details that he testified to on direct examination. The report failed to state that

6

Officer Tait heard grunting noises, that the victim was on her back with her hands on defendant's back, and that the victim's legs were spread. Additionally, the report did not state that defendant was moving in a "humping" fashion, nor that defendant's penis was wet and erect. Finally, the report did not state that the victim looked young nor that Officer Tait thought that they were engaged in sexual intercourse. Officer Tait did not prepare any reports in addition to the supplemental report.

Officer Tait further admitted that he did not see defendant's penis inside the victim's vagina, nor did he see defendant's penis touch the victim. Additionally, the victim was not screaming or crying, and defendant was not arrested for any sexual offense.

Officer Beluso also testified that when he entered the bedroom, he saw defendant lying in a bed with the victim, both of whom were naked from the waist down. The victim's legs were spread open and the defendant was lying in between them while making a "thrusting motion up and down." Officer Beluso testified that Officer Tait told defendant to stand up and when he did, Officer Beluso observed that defendant's penis was erect.

On cross-examination, Officer Beluso conceded that his arrest report did not state that he saw defendant "on top" of the victim. Additionally, Officer Beluso admitted that defendant was arrested for criminal trespass to land and not for any sexual offense.

The victim's mother, Kimberly S., also testified at trial. Kimberly S. testified that the victim was born on August 10, 1993, making the victim 12 years old and in the sixth grade at the time of the offense on June 7, 2006. She also identified a photograph of the victim and the victim's birth certificate. According to one officer's police report, Kimberly S. told the police at

the time of the arrest that she had once filed a missing persons report on the victim for not returning home, but was not questioned about her statement at trial. On cross-examination, however, Kimberly S. testified that she discovered that the victim did not attend school on June 7, 2006, and that she informed the police that KS was missing, although she did not file a missing persons report. A photograph of the victim on the day of the offense was also admitted into evidence.

In addition, JP, the victim from defendant's prior conviction for aggravated criminal sexual abuse, testified at the trial. In August of 2002, JP lived at the Hulton Children's Home, a group home which was operated by the Department of Children and Family Services (DCFS) and accepted residents up to 21 years old. On cross-examination, JP agreed that she was considered a "runaway" and a "runner" at the time. JP was 14 years old, while defendant, who was also a resident, was 19.

On August 3, 2002, JP and five other residents, including defendant, left the dormitory after curfew and went to a nearby shed. Inside the shed, defendant and JP had sexual intercourse. At the time, JP was unaware of defendant's age. JP testified on cross-examination that the residents stayed in the shed for approximately eight hours and then left together. JP also admitted that she only reported the incident because a staff member at the home interviewed her concerning the curfew violation and that defendant did not force her to go into the shed.

At the end of the State's case in chief, the parties stipulated to a certified record of defendant's guilty plea to aggravated criminal sexual abuse for the conduct involving JP. The certified record stated: "on or about August 3, 2002, [defendant] committed an act of sexual

penetration with JP, who was at least 13 years of age, but under 17 years of age, and the Defendant had sexual intercourse with JP, that Defendant was at least five years older than JP." The State then rested its case.

Defendant did not present any evidence and did not testify at trial.

Prior to closing arguments, the trial court informed the jury: "Both sides have rested. We're now proceeding with what's called closing arguments. They are not evidence. They are statements made by the attorneys reflecting on what they believe the evidence has shown."

In its closing argument, the State began by saying, "Ladies and gentlemen, at times laws are designed to protect those who cannot protect themselves, from those too immature, either physically or emotionally. Twelve year old girls fall into that category. That's why there is a legislative difference between predatory criminal sexual assault and rape. They are two completely different things." The State then went through the elements of the crime, including a description of the bedroom in which defendant and the victim were discovered: "Officer Taitt [*sic*] went into the room on that second floor. You know what, it turned out to be this lovely bedroom. Sort of an oasis in that abandoned building, isn't it. See the pretty pink sheets on the bed, see the stuffed animals strewn about the bed. Things that little girls like."

After discussing the elements of the case, the State discussed the use of circumstantial evidence and emphasized that the jury was also allowed to use its common sense. The prosecutor then stated:

> "Now, the Judge is also going to tell you and make it very
>
> clear, the only evidence that you are allowed to consider when you

9

are in that room deliberating is what came out of the mouths of the witnesses who got up on this stand, sat in that chair and swore to tell the truth. Not the attorney's questions, not the arguments of the attorneys. Only what was testified to from that witness stand."

Near the end of its argument, the State referred to defendant's prior conviction, with two objections by the defense:

"PROSECUTOR: [JP] was another one of the Defendant's young victims, where the Defendant pled guilty to what he had done to her. The Defendant's intent, motive and propensity. Well, what was the Defendant's intent in each of these cases. To have sex. What was his motive with [JP], with [KS]. Sexual pleasure. The Defendant's propensity. Look at the similarities between those two girls. They are one year apart. They are both emotionally troubled teens.

DEFENSE COUNSEL: Objection, Judge.

THE COURT: Sustained.

PROSECUTOR: [JP] is in DCFS custody. [KS] was playing hooky from school. So, Defendant's propensity. Defendant likes sex with --

DEFENSE COUNSEL: Objection, Judge.

THE COURT: Overruled."

No. 1-08-2891

During its closing argument, the defense urged the jurors not to consider the prior crime:

"By the way, we need to bring in this old case. Let's bring in this old case. Maybe, you know, to show Mr. Raymond is a bad person or he involves himself in some type of action. We're not asking you to like Mr. Raymond. This is not a contest of likability. This is a criminal case that requires proof beyond a reasonable doubt. This is a criminal case that requires more than two officers coming in here and telling you two different stories of information that there is no document of, just because they are police officers. That is not how the criminal justice system functions."

Later during the State's rebuttal, the defense objected three times:

"PROSECUTOR: This is not a case about police reports. This is a case that is about twelve year old [KS] and this Defendant, 23 year old Antonio Raymond. He keeps getting older, year after year, and his victims keep getting younger. First, in 2002, August 3rd of 2002, he takes [JP] who is then fourteen years old to a shed.

DEFENSE COUNSEL: Objection, Judge.

THE COURT: Overruled.

PROSECUTOR: To a shed where she's with five other people, if you count the Defendant, a group of them. He has sex with her. Now in 2006 he worked his way down to a 12 year old, [KS]. And the defense

11

wants to ask you where is [KS].  Why isn't she here.  Who cares where

[KS] is. [KS] is this girl in the picture.  She is twelve years old.

* * *

What he was there to do was to have sex with [KS].  Somebody

who is his type.  He likes young girls.  [JP] was 14. [KS] was 12.  He likes

busty girls.  Kind of chunky girls.

You saw [JP] up there.  You will see the picture of [KS].

He likes girls that are troubled, that are run-aways.

DEFENSE COUNSEL: Objection.

THE COURT: Sustained.

PROSECUTOR: [JP] ran away from her youth home. [KS] ran

away from home.  He likes girls who are troubled so he can turn --

DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

PROSECUTOR: He likes girls that he can turn into the woman

that he wants.  That's what he was trying to do that day."

While closing her argument during the State's rebuttal, the prosecutor stated:

"[W]e as a society have drawn a line in the sand.  We have

drawn the line at thirteen.  We say under the age of thirteen, that's

a different ballgame than people over the age of thirteen.  We're

not talking about a sixteen year old and a seventeen year old, close

12

in age. One had a birthday, turned seventeen, and the other one

didn't. That's not it.

We're talking about a twelve year old. That's where the

line in the sand is. Our law doesn't allow people to claim that that

eight year old, boy, she looks thirty. That five year old, she's

turning forty-five next month. Our line in the sand is at twelve.

* * *

We'd ask you to abide by that line in the sand and go back

and consider the evidence and to find this Defendant guilty of

predatory criminal sexual assault with a child."

After closing arguments, the trial court instructed the jury on the law, including a jury

instruction that "[n]either opening statements nor closing arguments are evidence, and any

statement or argument made by the attorneys which is not based on the evidence should be

disregarded." The court also instructed the jury to "disregard questions and exhibits which were

withdrawn or to which objections were sustained." The court further instructed the jurors:

"The Defendant is presumed to be innocent of the charge

against him. This presumption remains with him throughout every

stage of the trial and during your deliberations on the verdict, and

is not overcome unless from all the evidence in the case you are

convinced beyond a reasonable doubt that he is guilty.

The State has the burden of proving the guilt of the Defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The Defendant is not required to prove his innocence.

The fact that the Defendant did not testify must not be considered by you in any way in arriving at your verdict."

The jury found defendant guilty of predatory criminal sexual assault of a child, and defendant's later motion for a new trial was denied.

At the sentencing hearing, the trial court considered defendant's presentence investigation report and heard evidence of aggravation and mitigation. The court heard testimony regarding defendant's alleged assault of SM, as well as arguments from the attorneys describing defendant's prior conviction for aggravated criminal sexual abuse of JP, defendant's social and mental history, specific instances of dishonesty in the presentence investigation report, and defendant's two convictions for drug related offenses. At the hearing, defendant's also made a statement that he was sorry for his actions.

In imposing its sentence, the trial court stated that defendant was sorry for his actions and that he "never really had a chance" because of his home environment. The court also noted that defendant had a history of three felony convictions, and that he had been given the opportunity to rehabilitate himself by receiving probation for one offense, but the probation was terminated unsatisfactorily. The trial court specifically stated that the evidence regarding SM would be given little weight. The court sentenced defendant: "Again, taking your criminal history, your

social history into consideration, and all the factors set out in the statute, it is for the protection of society and young women throughout our state, country, that the sentence of this Court is 20 years in the Illinois Department of Corrections."

Defendant immediately filed a motion to reconsider the sentence in view of his background and the nature of his participation in the offense, which the trial court denied, stating that the sentence "is not excessive in light of your background and your participation in the offense, you being the actual offender in this case." Defendant filed this timely appeal.

## ANALYSIS

On appeal, defendant raises six issues. First, he argues that his conviction should be reversed because the State failed to prove the element of sexual penetration beyond a reasonable doubt. Defendant further raises four issues that he claims entitle him to a new trial: (1) that the trial court denied defendant a fair trial by refusing to allow him to argue mistake of age as a defense; (2) that the trial court erred in allowing evidence concerning defendant's prior conviction for aggravated criminal sexual abuse; (3) that the trial court violated Supreme Court Rule 431(b) during jury selection by not inquiring into all of the *Zehr* factors; and (4) that the State prevented defendant from receiving a fair trial by inflaming jurors' passions through improper remarks during closing argument and rebuttal. Finally, defendant asks for a reduced sentence because he claims that his sentence was excessive.

### I. Element of Penetration

In order to be convicted of predatory criminal sexual assault of a child, the accused must be 17 years of age or over, the victim must be under 13 years of age, and the accused must

commit "an act of sexual penetration" with the victim. 720 ILCS 5/12-14.1(a)(1) (West 2008). "Sexual penetration" is further defined as "any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person ***. Evidence of emission of semen is not required to prove sexual penetration." 720 ILCS 5/12-12(f) (West 2008).

Defendant argues that the State did not prove the element of sexual penetration beyond a reasonable doubt. In reviewing whether the State has proven an element of the crime beyond a reasonable doubt, the standard of review is whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements beyond a reasonable doubt. *People v. Quintana*, 332 Ill. App. 3d 96, 103 (2002). When presented with a challenge to the sufficiency of the evidence, the reviewing court will not reverse the conviction unless the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt as to defendant's guilt. *Quintana*, 332 Ill. App. 3d at 103.

Defendant argues that there was no evidence that defendant's penis touched the victim's vagina and, therefore, no sexual penetration was established. Defendant relies heavily on the language of *People v. Finley* that states that sexual penetration requires "actual contact" between the sex organ of one person and the sex organ, mouth or anus of another. *People v. Finley*, 178 Ill. App. 3d 301, 307 (1988). However, the "actual contact" language used in *Finley* is simply a way of distinguishing "sexual conduct," an element of criminal sexual abuse, from "sexual penetration," an element of criminal sexual assault. *Finley*, 178 Ill. App. 3d at 307 ("[A] finding that sexual penetration did not occur does not preclude a finding that sexual conduct did occur.

16

The latter may be committed 'through clothing,' the former may not"). In fact, other than holding that aggravated criminal sexual abuse is a lesser included offense of aggravated criminal sexual assault, the *Finley* court does not discuss criminal sexual assault at all, since the conviction that was the subject of the appeal was for criminal sexual abuse. *Finley*, 178 Ill. App. 3d at 305.

It is true that, as the *Finley* court noted, sexual penetration cannot be established if the only contact between the parties is through clothing. *Finley*, 178 Ill. App. 3d at 307. However, defendant seemingly misinterprets this "actual contact" requirement as a "direct evidence of contact" requirement, arguing that since Officers Tait and Beluso did not actually see defendant's penis touching the victim's vagina and there was no medical evidence or testimony from the victim, sexual penetration could not have been proven beyond a reasonable doubt. We do not find this argument persuasive.

Defendant is correct in stating that there was no medical evidence showing redness or abrasions on the victim's vagina or semen present. However, the lack of semen or trauma to the victim's genitals is not dispositive of the issue of penetration. The statute itself explicitly states that "[e]vidence of emission of semen is not required to prove sexual penetration." 720 ILCS 5/12-12(f) (West 2008). Similarly, courts have held that evidence of trauma is unnecessary because the statute considers penetration to have occurred as a result of "*any contact, however slight*, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person." (Emphasis added.) 720 ILCS 5/12-12(f) (West 2008). For instance, the defendant in *People v. Moore* argued that without evidence of trauma and with the victim's

17

hymen still intact there could not have been penetration. *People v. Moore*, 199 Ill. App. 3d 747, 773 (1990). We rejected that argument, holding that "it is clear that the statutory definition does not require physical penetration but merely requires contact." *Moore*, 199 Ill. App. 3d at 773. Thus, these factors are not necessary for a finding of penetration.

The most serious flaw in defendant's argument is his focus on direct evidence. While direct evidence in the form of testimony from the victim or in some other form would clearly be helpful in determining whether there was penetration, it is not required. The trier of fact is allowed to make reasonable inferences based on the evidence presented, and may find penetration in the absence of direct evidence.

The case of *People v. Herring*, 324 Ill. App. 3d 458 (2001), is instructive. The defendant in that case was convicted of two counts of home invasion and four counts of aggravated criminal sexual assault. *Herring*, 324 Ill. App. 3d at 459. On appeal, the defendant argued that he was not proven guilty beyond a reasonable doubt of all four counts of aggravated criminal sexual assault because there was only evidence of three instances of penetration. *Herring*, 324 Ill. App. 3d at 459. In the contested instance, the victim had testified that she was lying face up on the floor with the defendant lying over her, with his knees on top of her and his legs on either side of her. *Herring*, 324 Ill. App. 3d at 466. The defendant had his penis out, had pulled the victim's clothes down below her knees, had both hands on her mouth and was " 'trying to stick his thing in.' " *Herring*, 324 Ill. App. 3d at 466. However, the victim also testified that the defendant " 'never did get a chance to really do anything' " and never explicitly stated that any contact occurred. *Herring*, 324 Ill. App. 3d at 464.

18

We emphasized that the issue of penetration is a question of fact that should be determined by the trier of fact and that a lack of detail in the victim's testimony only affects the weight of the evidence. *Herring*, 324 Ill. App. 3d at 464; see also *People v. Shum*, 117 Ill. 2d 317, 356 (1987). Further, "the trier of fact is not required to disregard the natural inferences that flow normally from the evidence, nor is it required to search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Herring*, 324 Ill. App. 3d at 464, citing *People v. Bull*, 185 Ill. 2d 179, 205 (1998). We noted that the trier of fact is entitled to draw all reasonable inferences from both direct and circumstantial evidence, including an inference of penetration. *Herring*, 324 Ill. App. 3d at 465. We affirmed the defendant's conviction, holding that, "even without direct testimony from the victim that 'contact' occurred, the trier of fact could reasonably infer that 'contact, however slight,' occurred." *Herring*, 324 Ill. App. 3d at 466.

Similarly, the jury in the instant case could reasonably have inferred that some contact occurred between defendant and the victim's genitals. Officer Tait testified that he heard grunting noises coming from the bedroom. Officers Tait and Beluso both testified that they saw defendant and the victim lying on a bed, naked from the waist down, with defendant on top of the victim. Both officers stated that the victim's legs were spread open and that defendant's legs were between hers. Both officers also explained that defendant was moving his buttocks; Officer Beluso characterized defendant as making a "thrusting motion up and down," while Officer Tait said that defendant was moving in a "humping fashion." Finally, when Officer Tait ordered defendant to stand up, both officers noticed that defendant's penis was erect, while Officer Tait

19

also noticed that it was wet. Certainly, a reasonable inference from this testimony was that defendant's penis had made contact with the victim's genitals. Viewing all of the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that defendant committed predatory criminal sexual assault of a child beyond a reasonable doubt.

## II. Mistake of Age Defense

Defendant also argues that the trial court erred when it denied defendant the opportunity to present a defense based on mistake of age because predatory criminal sexual assault of a child is not a strict liability offense. Prior to trial, the trial court granted the State's motion *in limine* barring defendant from referencing his belief that the victim was over 17. As a threshold matter, in order to preserve the issue for appeal, defendant was required to raise the issue by objecting at trial and in a posttrial motion. *People v. Martinez*, 242 Ill. App. 3d 915, 925 (1992). Defendant has failed to do so and therefore has waived his right to this claim. *People v. Daniels*, 331 Ill. App. 3d 380, 389 (2002).

Nevertheless, defendant urges us to review this claim under plain error. "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). However, before we reach the issue of plain error, we must first determine whether any error occurred at all. *People v. Walker*,

20

392 Ill. App. 3d 277, 294 (2009) ("[i]n a plain error analysis, 'the first step' for a reviewing court is to determine whether any error at all occurred").  We find the trial court's denial of the use of mistake of age as a defense to be proper and therefore, there was no error, much less plain error.

The Second District of the Appellate Court had the opportunity to consider this issue in *People v. Douglas*, 381 Ill. App. 3d 1067, 1081 (2008), where it held that mistake of age is not a defense to a charge of predatory criminal sexual assault of a child.  In its opinion, the *Douglas* court performed a thorough and persuasive analysis of the statutory language, the language of similar statutes, Illinois case law, and foreign authority.

Defendant urges us not to rely on *Douglas*, claiming that the Second District improperly relied on the case of *People v. Barfield*, 187 Ill. App. 3d 257 (1989), which was rejected by the Illinois Supreme Court in *People v. Terrell*, 132 Ill. 2d 178 (1989).  In *Barfield*, we held that aggravated criminal sexual assault[3] of a victim under 13 was a strict liability crime and, with no analysis, concluded that it was not a defense for the defendant to claim that he believed that the victim was over the age of 13.  *Barfield*, 187 Ill. App. 3d at 264.

The challenge before our supreme court in *Terrell* was whether the aggravated criminal sexual assault statute was unconstitutional because it required a less culpable mental state than was required for aggravated criminal sexual abuse, a lesser offense.  *Terrell*, 132 Ill. 2d at 206.  In its decision, the court rejected at least part of *Barfield*'s holding when it noted that "the

[3] Prior to 1996, predatory criminal sexual assault of a child was codified as aggravated criminal sexual assault.  The two statutes are identical in relevant part, so decisions made under the prior statute are instructive.

legislature clearly did not intend the aggravated criminal sexual assault statute to define a strict liability or public welfare offense" and, accordingly, held that "a mental state of either intent or knowledge implicitly is required for sexual penetration to occur." *Terrell*, 132 Ill. 2d at 209. Significantly, the *Terrell* court focused exclusively on the sexual penetration element and not on any of the other elements, including the age of the victim. In fact, when defining "aggravated criminal sexual assault," the court stated: "Aggravated criminal sexual assault is defined in section 12--14 of the Criminal Code [(Ill. Rev. Stat. 1985, ch. 38, par. 12-14)], which specifies that an accused commits aggravated criminal sexual assault if he or she commits an act of 'sexual penetration' *under certain defined circumstances.* [Citations.]" (Emphasis added.) *Terrell*, 132 Ill. 2d at 207. The court never discussed the other "defined circumstances," which include the age of the victim, supporting the conclusion that its analysis applies only to the element of penetration. It is clear that *Terrell* does require a mental state for sexual penetration, but equally clear that the decision does not address any of the other elements of the crime. Thus, the *Douglas* court's consideration of *Barfield* was not improper.

Moreover, the *Douglas* court did not reach its conclusion solely by considering *Barfield* but instead relied on a number of factors to support its holding that the mistake of age defense was not available. The court began with the statutory language itself, as well as the statutes defining mental states and defenses to article 12 sex crimes. *Douglas*, 381 Ill. App. 3d at 1070-74. From this, the court determined that the age of the accused and of the victim were "attendant circumstances" that did not require a mental state. *Douglas*, 381 Ill. App. 3d at 1074.

22

After examining the language of the statute itself, the court then analyzed how the statute has been interpreted, considering *Barfield*, *Terrell*, and *People v. Burton*, 201 Ill. App. 3d 116 (1990). From this, it determined that the scant case law seems to support the idea that mistake of age is not a defense. *Douglas*, 381 Ill. App. 3d at 1077. Finally, the court considered foreign authority to see how other jurisdictions had interpreted analogous statutes. *Douglas*, 381 Ill. App. 3d at 1077-80.

The *Douglas* court additionally addressed arguments based on public policy, several of which were also raised by defendant in the instant case. The court discussed the traditional understanding that offenses requiring no *mens rea* were disfavored, and specifically analyzed the United States Supreme Court case of *United States v. Morissette*, 342 U.S. 246, 96 L. Ed. 288, 72 S. Ct. 240 (1952). *Douglas*, 381 Ill. App. 3d at 1081-83. The court noted that even in *Morrissette*, the United States Supreme Court recognized that sexual offenses were treated differently than other crimes and traditionally did not require a mental state with regard to the victim's age. *Douglas*, 381 Ill. App. 3d at 1084. The *Douglas* court also addressed the defendant's labeling of the crime as "strict liability," stating that it was not a strict liability crime because the act of penetration required a mental state. *Douglas*, 381 Ill. App. 3d at 1085. Finally, the court noted that predatory criminal sexual assault of a child, as well as other statutory rape crimes, address the public policy concern of protecting vulnerable members of society. *Douglas*, 381 Ill. App. 3d at 1085. We adopt the *Douglas* court's reasoning and find that the trial court correctly denied defendant the opportunity to present the defense of mistake of age.

III. Other Crimes Evidence

23

The next issue that defendant raises is that the trial court erred in admitting evidence concerning defendant's prior conviction for aggravated criminal sexual abuse. The decision to admit or exclude other crimes evidence rests within the sound discretion of the trial court and that decision will not be disturbed absent an abuse of discretion. *People v. Childress*, 338 Ill. App. 3d 540, 545 (2003). A trial court abuses its discretion only when its ruling is "arbitrary, fanciful or where no reasonable person would take the view adopted by the trial court." *Childress*, 338 Ill. App. 3d at 545, citing *People v. Illgen*, 145 Ill. 2d 353, 364 (1991).

Generally, evidence concerning other crimes is inadmissible to demonstrate a propensity to commit a crime. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003). The evidence is not considered irrelevant; rather, it is considered to be too likely to persuade the jury to convict the defendant based on his past bad behavior. *Childress*, 338 Ill. App. 3d at 548. Other crimes evidence is admissible to prove certain facts, such as "intent, *modus operandi*, identity, motive, [and] absence of mistake," but may still be excluded if the prejudicial effect of the evidence substantially outweighs its probative value. *Donoho*, 204 Ill. 2d at 170, citing *Illgen*, 145 Ill. 2d at 364-65.

The Illinois legislature made an exception to the common law bar against the use of other crimes evidence to show propensity in the case of certain sexual crimes. Section 115-7.3 of the Code of Criminal Procedure of 1963 provides:

"(a) This Section applies to criminal cases in which:

24

(1) the defendant is accused of predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, aggravated criminal sexual abuse, criminal sexual abuse, child pornography, aggravated child pornography, or criminal transmission of HIV;

* * *

(b) If the defendant is accused of an offense set forth in paragraph (1) or (2) of subsection (a) or the defendant is tried or retried for any of the offenses set forth in paragraph (3) of subsection (a), evidence of the defendant's commission of another offense or offenses set forth in paragraph (1), (2), or (3) of subsection (a), or evidence to rebut that proof or an inference from that proof, may be admissible (if that evidence is otherwise admissible under the rules of evidence) and may be considered for its bearing on any matter to which it is relevant.

(c) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:

(1) the proximity in time to the charged or predicate offense;

No. 1-08-2891

> (2) the degree of factual similarity to the charged or
> predicate offense; or

> (3) other relevant facts and circumstances."  725
> ILCS 5/115-7.3 (West 2008).

Our Illinois Supreme Court has held that this statute allows courts to admit evidence of other crimes to show the defendant's propensity to commit sex offenses.  *Donoho*, 204 Ill. 2d at 176.

In this case, the trial court allowed the State to introduce evidence of defendant's 2002 conviction for aggravated sexual abuse of JP.  It also initially granted the State's motion to allow evidence of an uncharged sexual assault against SM, but later granted defendant's motion to reconsider that ruling.  In allowing the other crimes evidence, the court stated:

> "The Court has reviewed the motion, considered the
> arguments, response to the motion, considered the case law,
> specifically Donahue[4], considered the federal rules of evidence,
> specifically 413, and United States versus Withorn, cited at 204 F
> 3d 790, Eighth Circuit Court case in 2000, allowing prior sexual

---

[4] The trial court, the State, and the defense are all in the record as referring to "Donahue" while arguing the motion.  However, it is clear from the record that the parties and the court were actually referring to *People v. Donoho*, the Illinois Supreme Court case that held that other crimes evidence can be admitted to show propensity.

assaults to prove a defendant's propensity to rape teenage girls and then possibly claim that they have consented.

The Court finds the four years for three separate sexual assaults is, in fact, close in time. All of the incidents occurred in locations where, I guess, we could say normally consensual sex does not occur; a vehicle, a shed, and an abandoned home.

The Court has weighed the probative versus the prejudicial value and finds that the prior sexual assaults which occurred within four years are admissible."

Section 115-7.3 and *Donoho* require the court to consider three factors in balancing the probative and prejudicial value of other crimes evidence: proximity in time, degree of factual similarity, and other relevant facts and circumstances. 725 ILCS 5/115-7.3 (West 2008); *Donoho*, 204 Ill. 2d at 183. The trial court explicitly considered the first two factors and also announced that the evidence would be admitted after balancing its probative and prejudicial value. We cannot say that the trial court abused its discretion in making that decision.

The first factor, proximity in time, weighs in favor of admission. The time between the assault of JP and the encounter with the victim in the instant case was four years. There is no bright line rule about when a crime is too distant in time to be admitted; instead, the proximity in time must be evaluated on a case-by-case basis and is a factor in determining the other crime's probative value. *Donoho*, 204 Ill. 2d at 183-84.

No. 1-08-2891

In this case, the four-year lapse between the assault of JP and the encounter with the victim was not too distant in time to be admissible. Moreover, defendant seems to agree, because his brief does not mention the fact that the trial court considered four years to be close in time but his brief solely focuses on the factual similarities between the crimes. Thus, we cannot say that the trial court abused its discretion in finding the two incidents to be close in time.

The second factor to be considered in the balancing test is the degree of factual similarity between the two crimes. In order for other crimes evidence to be admissible, there must be some " 'threshold similarity' " to the charged crime. *Donoho*, 204 Ill. 2d at 184, quoting *People v. Bartall*, 98 Ill. 2d 294, 310 (1983). If the other crimes evidence is being used to show *modus operandi* or that the charged offense was part of a common scheme or design, the level of similarity between the charged offense and the other crime must be high; "[t]he two offenses must share such distinctive common features as to earmark both acts as the handiwork of the same person." *Illgen*, 145 Ill. 2d at 372-73, citing *People v. McKibbins*, 96 Ill. 2d 176, 185-86 (1983). If, however, the evidence is being used for some other purpose, such as the absence of an innocent frame of mind or the presence of criminal intent, "mere general areas of similarity will suffice" for the evidence to be admissible. *Illgen*, 145 Ill. 2d at 373, citing *McKibbins*, 96 Ill. 2d at 185-86. Our supreme court has determined that the use of other crimes evidence to show propensity allowed by section 115-7.3 requires only " 'mere general areas of similarity' " between the past offense and the charged offense to be admissible. *Donoho*, 204 Ill. 2d at 184, quoting *Illgen*, 145 Ill. 2d at 372-73. Additionally, because "no two independent crimes are identical," the presence of some differences does not defeat admissibility. *Donoho*, 204 Ill. 2d at

28

185, citing *Illgen*, 145 Ill. 2d at 373. However, an increase in factual similarity leads to an increase in the probative value of the other crimes evidence. *Donoho*, 204 Ill. 2d at 184, citing *Bartall*, 98 Ill. 2d at 310.

Defendant relies heavily on the cases of *People v. Johnson*, 389 Ill. App. 3d 618 (2009), and *People v. Holmes*, 383 Ill. App. 3d 506 (2008), to argue that the similarities between the crimes are not sufficient to support admission of the other crimes evidence. Initially, it is important to note that the decision to admit or exclude other crimes evidence is necessarily fact-specific, so the fact that one court admitted or excluded evidence based on the particular facts before it does not necessarily mean that the same result applies in another case with different facts.

Additionally, one critical distinction between the cases cited by defendant and the case at bar is the nature of the crime itself. This case involves an adult engaging in sexual intercourse with a child. The kinds of facts relevant to that type of case differ greatly from the types of facts important in the case of a sexual assault involving force, as is present in both *Holmes* and *Johnson*. For instance, in *Holmes*, there were details including how the parties knew each other, how the defendant attacked each victim, the presence of a weapon, and threatening language from the defendant. *Holmes*, 383 Ill. App. 3d at 508-09. Likewise, in *Johnson*, the relevant facts included details about where the victims were abducted, where they were taken to be assaulted, and whether the defendant used physical force and threatened to kill the victims. *Johnson*, 389 Ill. App. 3d at 624. Those kinds of facts are often simply not present in the type of case before us today.

Instead, the relevant facts would likely focus on details such as the relationship between the parties, the age of the victim, and where the parties went to have their encounters. For example, the important facts in *People v. Taylor*, 383 Ill. App. 3d 591, 595 (2008), included that the defendant was in a position of trust or authority to the victims, he lured the victims by offering to assist them, the victims were all male and shared the defendant's surname, and the manner in which the defendant performed sex on the victims. Similarly, our supreme court in *Donoho* focused on the age range of the children, that children of both genders were included, that both incidents involved the defendant inserting his finger into the girl's vagina, and that both incidents involved the defendant forcing both children to touch his penis. *Donoho*, 204 Ill. 2d at 185. Finally, in *People v. Butler*, 377 Ill. App. 3d 1050, 1066 (2007), the Fourth District Appellate Court considered that both incidents involved a teenage female relative in the care of defendant and her husband, that both incidents involved defendant and her husband giving the victim alcohol, and that defendant initiated the encounters while her husband watched and encouraged the contact.

Nevertheless, because defendant relies on *Holmes* and *Johnson*, we will look at each of those cases in depth. In *Holmes*, we considered two instances of other crimes evidence that were excluded by the trial court. The victim in the case knew the defendant from high school, and alleged that he punched and choked her inside his vehicle, threatened her with a knife, and raped her. *Holmes*, 383 Ill. App. 3d at 508. The defendant then drove her to his father's house and said that he wanted her to tell his father that they were getting married; he threatened to kill her if she disobeyed him, but let her leave at some point. *Holmes*, 383 Ill. App. 3d at 508.

The trial court denied the prosecution's attempt to introduce evidence of the other two crimes, finding that the 1994 crime was too distant in time from the charged crime and that the 1996 crime was not similar to the charged offense. *Holmes*, 383 Ill. App. 3d at 510. On appeal, we found that the trial court abused its discretion by barring evidence of the 1994 crime, because it was not too remote in time and there were a number of similarities between the crimes. *Holmes*, 383 Ill. App. 3d at 516-17. Both victims were women who had rejected defendant's advances, both assaults occurred during the day, defendant punched both victims and assaulted them at knifepoint, and defendant later claimed that each woman had consented. *Holmes*, 383 Ill. App. 3d at 516-17.

However, we held that the evidence of the 1996 crime was properly excluded by the trial court. *Holmes*, 383 Ill. App. 3d at 519. While the 1996 crime was close in time to the charged offense, we found that the details of the crimes were not similar because in the 1996 crime: (1) there was a second person present in the apartment at the time of the attack, (2) the victim voluntarily entered the defendant's bedroom and only later resisted, (3) defendant did not threaten the victim with a weapon, (4) there was no actual penetration in the 1996 case because defendant was interrupted, and (5) the victim in the 1996 crime escaped from defendant while the victim in the charged offense was allowed to leave. *Holmes*, 383 Ill. App. 3d at 518-19.

Similarly, in *Johnson*, we held that other crimes evidence should not have been admitted because of lack of similarity. The victim in that case was pulled into an alley at 9:30 p.m. and brought to an abandoned building. *Johnson*, 389 Ill. App. 3d at 619. Though the defendant did

not have a weapon, he threatened to kill her if she did not do as he said, at which point the defendant vaginally penetrated the victim. *Johnson*, 389 Ill. App. 3d at 619.

At trial, the prosecution attempted to introduce other crimes evidence of an uncharged sexual assault occurring in 2003, which the trial court allowed. *Johnson*, 389 Ill. App. 3d at 620-21. On appeal, we found that the trial court abused its discretion when it admitted the evidence because of the differences between the crimes and the fact that the trial court did not perform a meaningful analysis of the prejudicial effect of the evidence. *Johnson*, 389 Ill. App. 3d at 625. Specifically, we noted that the victim in the charged offense was only assaulted by one man, while the 2003 victim was assaulted by two, and that the 2003 victim testified that the defendant used a vehicle, blew cocaine in her face and gave her alcohol, and anally penetrated her, which were circumstances not present in the case being tried. *Johnson*, 389 Ill. App. 3d at 625.

Defendant attempts to argue that *Johnson* and *Holmes* demonstrate that generic similarities such as vaginal penetration are insufficient and that the details of the crimes must be equivalent. However, neither *Johnson* nor *Holmes* stands for such a proposition. It is true that both cases had a number of details that we compared in determining whether the other crimes evidence should have been admitted. However, neither case contained any sort of requirement for the number or type of details necessary for there to be sufficient similarity. Instead, both cases involved a factual comparison based on the evidence in the record.

Additionally, defendant argues a number of times that details must be equivalent and that "generic" or "general" similarities are insufficient. In fact, as noted above, our supreme court has explicitly stated that the details do *not* have to be equivalent, and often cannot be. *Donoho*, 204

32

Ill. 2d at 185 ("The existence of some differences between the prior offense and the current charge does not defeat admissibility because no two independent crimes are identical"). Moreover, if other crimes evidence is being used to show propensity as allowed by section 115-7.3, then " 'mere general areas of similarity will suffice.' " *Donoho*, 204 Ill. 2d at 185, quoting *Illgen*, 145 Ill. 2d at 372-73.

When looking for general similarities, it is rare to find a case comparing crimes that does not also contain significant differences. For instance, in *Donoho*, the supreme court found that the trial court did not abuse its discretion in admitting other crimes evidence despite differences including (1) in one case the defendant had no relationship to the children while in the other he was their stepfather; (2) in one case there was a single incident while in the other there were several incidents spanning three years; (3) one case involved a boy and girl at the same time while in the other, conduct occurred with them separately; and (4) in one case he told the children they were playing a game while in the other he threatened to ground them if they told anyone. *Donoho*, 204 Ill. 2d at 185. Likewise, the court in *Taylor* found that the trial court abused its discretion by excluding other crimes evidence even though the victims differed in age and maturity level and, most notably, the charged crime included anal penetration with a hairbrush as well as mutual masturbation, while the earlier offense did not include either. *Taylor*, 383 Ill. App. 3d at 595-96. Thus, the fact that differences are present does not mean that there is not general similarity.

In this case, there are general areas of similarity between the two crimes. The two victims were female and were in the same age range of 12 to 14 years old. Defendant was significantly

older than each of the girls; he was almost 20 when he assaulted JP and 23 when he committed the charged offense against KS. Both girls seem to have had problems with their home lives; JP described herself as a "runaway" and a "runner," while evidence indicated that KS had not attended school on at least one occasion, prompting her mother to inform the police. Both encounters were in places where defendant was not permitted to be; his assault of JP was in a shed on the group home's property after curfew, while the encounter with KS occurred in a possibly abandoned house that did not belong to either of them. The locations were also places that were at least somewhat familiar to the victims; JP was a resident at the group home at the time of the assault, while defendant claimed that KS told him that the house belonged to her cousin. Both began as consensual encounters, and both involved vaginal penetration.

Defendant correctly points out that there were several differences between the two crimes, as well. During defendant's assault of JP, there were four other people present; with KS, they were alone. The encounter with JP occurred late at night, while the incident with KS was during the day. Defendant also argues that the encounter with JP took place in a public shed while the one with KS took place in a private house; actually, the shed was on the group home's property and in the instant case, defendant was in fact initially arrested for criminal trespass to land because the house did not belong to either of the parties. Nevertheless, the shed was arguably a more public place than was the house.

Defendant argues that the differences between the crimes, as well as similarities that he characterizes as "generic," demonstrate that the trial court abused its discretion in allowing evidence of the other crime to be admitted. While the difference in the number of people present

34

could be found to be significant, we find that the other factual similarities were sufficient for the trial court to determine that the evidence was admissible. We note that defendant attempts to paint vaginal penetration and the minority of the victim as common facts in cases of predatory criminal sexual assault of a minor and implies that any similarity on that basis is insufficient. It may be that penetration and the minority of the victim are elements of the crime, but that does not mean that these facts cannot be considered in analyzing the similarity of the crimes.

The final factor to be considered in the analysis includes any other relevant facts and circumstances. One factor relevant to our discussion is the care that the trial court took in determining whether the evidence would be admissible. In its ruling, the court referenced the motions, the arguments, the relevant case law, and the analogous federal rule of evidence and federal case law. The trial court also initially allowed two instances of other crimes evidence, but reconsidered one after determining that there were not enough similarities, indicating that the trial court closely considered the factors required by the statute.

Moreover, the other crimes evidence was not presented in a way that the jury would tend to convict defendant only because he was a bad person deserving punishment. A trial court that admits other crimes evidence must be careful that the evidence does not become the focal point of the trial. *People v. Boyd*, 366 Ill. App. 3d 84, 94 (2006). Here, the other crimes evidence was not. The State presented only one witness, JP, as well as a certified record of defendant's guilty plea. The State also referred to JP during its closing argument, with the trial court sustaining some of defendant's objections and overruling others. Defendant's closing argument also reduced the prejudicial value of the evidence because defense counsel specifically referred to JP

35

and asked the jury not to give the prior conviction any weight. After considering all of the factors in balancing the probative value of the other crimes evidence against its prejudicial impact, we find that the trial court did not abuse its discretion in admitting evidence of defendant's prior conviction for aggravated criminal sexual abuse.

IV. Supreme Court Rule 431(b)

Defendant's fourth issue on appeal is that the trial court violated Supreme Court Rule 431(b). He argues that the trial court failed to mention one required *Zehr* principle and did not inquire into the other three properly.

Although supreme court rules are not statutes, they have " 'the force of law, and the presumption must be that they will be obeyed and enforced as written.' " *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002), quoting *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995). Issues concerning the interpretation of a supreme court rule are reviewed *de novo*. *People v. Reed*, 376 Ill. App. 3d 121, 125 (2007).

Illinois Supreme Court Rule 431(b) is a codification of our supreme court's holding in *People v. Zehr*, 103 Ill. 2d at 477. In *Zehr*, our supreme court held that it is "essential to the qualification of jurors in a criminal case *** that they know" and accept four fundamental principles: (1) that defendant is presumed innocent; (2) that defendant is not required to produce any evidence on his own; (3) that defendant must be proven guilty beyond a reasonable doubt; and (4) that defendant's failure to testify on his own behalf cannot be held against him. *Zehr*, 103 Ill. 2d at 477. These four principles are commonly known as the four "*Zehr* principles."

No. 1-08-2891

*People v. Jocko*, 389 Ill. App. 3d 247, 259 (2009); *People v. Martinez*, 386 Ill. App. 3d 153, 158 (2008); *People v. Gilbert*, 379 Ill. App. 3d 106, 109 (2008).

Currently, Supreme Court Rule 431(b) provides:

"(b) The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

To ensure compliance with its 1984 *Zehr* decision, our supreme court amended Rule 431 twice, with the first amendment in 1997 and the second in 2007. Under the 1997 version, the rule began with the phrase, "[i]f requested by the defendant." 177 Ill. 2d R. 431(b). According to the committee notes, the 1997 amendment sought to "end the practice where the judge makes a

broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431, Committee Comments, at lxxix. The 1997 rule did not place the trial court under an obligation to question potential jurors regarding the *Zehr* principles unless the defendant made a request. *People v. Graham*, 393 Ill. App. 3d 268, 272 (2009). Once the supreme court amended the rule in 2007, the trial court was required to ask about the *Zehr* principles regardless of whether there was a request by the defense. Both parties in the case at bar agree that the 2007 version of the rule was in force at the time of defendant's trial.

Defendant argues that the trial court violated Rule 431(b) by failing to mention one of the *Zehr* principles entirely and did not properly inquire into the other three. The State correctly notes that defendant did not preserve the issue for review by failing to object at trial and in his posttrial motion. Thus, we review defendant's claim for plain error.

As stated earlier, "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Piatkowski*, 225 Ill. 2d at 565. Before we reach the issue of plain error, we must first determine whether any error occurred at all. *Walker*, 392 Ill. App. 3d at 294 ("[i]n a plain error analysis, 'the first step' for a reviewing court is to determine whether any error at all occurred").

Defendant argues that the trial court failed to mention defendant's right not to present evidence. He also claims that the trial court did not ascertain whether the prospective jurors understood the other three principles. We agree with defendant concerning the first of these issues.

During *voir dire*, the trial court addressed the prospective jurors as a whole, then further addressed two groups of 14 potential jurors. When it addressed the *venire* as a whole, the trial court read the charges against defendant and cautioned that the grand jury indictment was not evidence against defendant. The court then stated that defendant was presumed innocent of the charges against him and that he was not required to prove his innocence. The court also told the jury twice that the State had the burden of proving defendant guilty beyond a reasonable doubt.

When addressing the first group of prospective jurors, the trial court further explained:

"The Defendant as I stated is not required to prove his innocence. He has a right to testify. He has a right to remain silent. Should he exercise his right to remain silent and not testify, is there anybody who would hold that against him? No response.

The State has the burden of proving the Defendant guilty beyond a reasonable doubt. Should the State meet their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go into the jury room with your fellow jurors and the law that governs this case as I give it to

you and sign a verdict form of guilty. Anybody who could not or would not do that for any reason? No response.

Should the State fail to meet their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go into the jury room with your fellow jurors and sign a verdict form of not guilty?

No response."

Neither party objected to any of the trial court's comments. The trial court then interviewed each prospective juror individually, but did not inquire further into any of the *Zehr* principles.

After dismissing 7 prospective jurors from the first group by peremptory challenges or for cause, the trial court called a second group of 14 potential jurors. When addressing the second group, the trial court stated:

"The Defendant Mr. Raymond is presumed innocent of the charges against him. The State has the burden of proving him guilty beyond a reasonable doubt. He is not required to prove his innocence. He is not required to testify. He choose not to testify, is there anybody seated in the jury box who would hold that against him? No response.

If the State meets that burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not or would not go into the jury room with your fellow jurors and the

law that governs this case as I give it to you and sign a verdict form

of guilty? Anybody who could not or would not do that for any

reason? No response.

Should the State fail to meet their burden of proof beyond a

reasonable doubt, is there anybody seated in the jury box who

could not or would not go into the jury room with your fellow

jurors and the law that governs this case as I give it to you and sign

a verdict form of not guilty? No response."

Again, neither party objected to any of the trial court's comments and the court continued,

questioning the prospective jurors individually but making no further reference to any of the *Zehr*

principles. After the second group was questioned, the parties agreed on a jury consisting of 12

jurors and 2 alternate jurors.

We agree with defendant that the trial court violated Rule 431(b) in its questioning. The

trial court explicitly mentioned three of the four *Zehr* principles: that defendant is presumed

innocent, that the State had the burden of proving defendant guilty beyond a reasonable doubt,

and that defendant's failure to testify could not be held against him. However, the court did not

advise the prospective jurors that defendant was not required to offer any evidence on his own

behalf. While the State acknowledges that the trial court did not explicitly mention that factor, it

argues that the jury was properly instructed that defendant did not need to produce evidence

when the trial court stated that the defendant was not required to prove his innocence. However,

there is a difference between stating that a defendant is not required to *prove* his

innocence—indicating that the burden of proof is on the State—and explaining that defendant

was not required to produce *any* evidence. Thus, we find that the trial court failed to mention

one *Zehr* factor and thereby committed error. See, *e.g.*, *People v. Glasper*, 234 Ill. 2d 173, 189

(2009) (finding that failure to question jurors about one principle was error); *People v.

Magallanes*, 397 Ill. App. 3d 72, 83 (2009) (finding that "error clearly occurred" where trial court

did not question jurors about one principle).

Additionally, defendant argues that the trial court committed error by not questioning the

prospective jurors about whether they understood the three *Zehr* principles that it did mention.

We find no error because we do not believe there is magic language that needs to be used to

show whether a prospective juror understands and accepts the four *Zehr* principles (*People v.

McCovins*, 399 Ill. App. 3d 323, 327 (2010)). The trial court explained each of the three factors

thoroughly. For instance, the court explained the burden of proof three times: twice before the

*venire* as a whole and once before each group of prospective jurors. The court also made it very

simple for the prospective jurors to respond to each question that it asked. The court explained

the principles and paused every few sentences to ask, "Anybody who could not or would not do

that for any reason?" or "[I]s there anybody who would hold that against him?" By questioning

the prospective jurors every few sentences, the trial court ensured that the jurors would be able to

focus on each principle explained instead of making "a broad statement of the applicable law

followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d

R. 431, Committee Comments, at lxxix. This questioning was sufficient to give the jurors the

opportunity to disagree with any of the principles. See *People v. Wilmington*, 394 Ill. App. 3d

42

567, 576 (2009) (noting that Rule 431(b) requires all four admonishments and "an opportunity to disagree with each of the four principles").

Additionally, the trial court repeated the *Zehr* principles in its jury instructions. The court instructed the jurors:

"The Defendant is presumed to be innocent of the charge

against him. This presumption remains with him throughout every

stage of the trial and during your deliberations on the verdict, and

is not overcome unless from all the evidence in the case you are

convinced beyond a reasonable doubt that he is guilty.

The State has the burden of proving the guilt of the

Defendant beyond a reasonable doubt, and this burden remains on

the State throughout the case. The Defendant is not required to

prove his innocence.

The fact that the Defendant did not testify must not be

considered by you in any way in arriving at your verdict."

These jury instructions served to reinforce the principles that the trial court questioned the jurors about at the beginning of trial. Thus, we find no error in the trial court's questioning regarding the three *Zehr* principles that it explained, but do find error in the trial court's failure to mention that defendant was not required to produce any evidence.

Because we find error, we proceed to the plain error analysis. The issue of whether a *Zehr* violation is analyzed through a harmless error analysis under the first prong of plain error or

requires automatic reversal under the second prong is a contentious one, with two distinct lines of cases emerging. Our supreme court issued supervisory orders on both sides, directing the courts to reconsider the issue in light of its holding in *Glasper*. See *People v. Hammonds*, 399 Ill. App. 3d 927, 950-54 (2010) (providing a complete list of cases vacated by the supreme court). Nevertheless, the two lines of cases remain.

In *Glasper*, our supreme court considered whether a violation of the 1997 version of Rule 431(b) was subject to harmless error analysis. *Glasper*, 234 Ill. 2d at 185-86. In that case, the defense requested Rule 431(b) questioning, placing the trial court under a duty to ask the questions. *Glasper*, 234 Ill. 2d at 189. However, the trial court refused, resulting in the trial court failing to question the jury regarding the defendant's right not to testify. *Glasper*, 234 Ill. 2d at 189. The *Glasper* court found that the refusal to ask was a clear violation of Rule 431(b) and had to determine whether to apply a harmless error analysis or presume prejudice. *Glasper*, 234 Ill. 2d at 189.

The supreme court determined that the error was not a structural error requiring automatic reversal, noting that "we cannot say that Rule 431(b)(4) questioning is indispensable to a fair trial." *Glasper*, 234 Ill. 2d at 196. The court ultimately held that a violation of Rule 431(b) is amenable to harmless error review. *Glasper*, 234 Ill. 2d at 200. However, the court was considering the 1997 version of the rule and specifically stated that "[w]e emphasize that this holding is limited to the version of Rule 431(b)(4) that was in effect at the time of the instant trial, and would not necessarily apply to subsequent versions of the rule." *Glasper*, 234 Ill. 2d at

200. Because of that language, courts considering the 2007 version of the rule must determine whether to apply *Glasper*'s reasoning or limit *Glasper* to the prior version of the rule.

Courts applying *Glasper* to postamendment cases have held that harmless error applies, while courts that limit *Glasper* to the 1997 rule have held that the error requires automatic reversal. Compare *Wilmington*, 394 Ill. App. 3d at 575 ("[t]he failure to conduct a complete admonition in accordance with Rule 431(b) denied defendant the right to a fair and impartial jury, which is a substantial right, and therefore constituted plain error"), with *Magallanes*, 397 Ill. App. 3d at 92 ("we find that the trial court's failure to comply with Rule 431 does not mandate automatic reversal"). Defendant in the case at bar argues that we should follow the line of cases refusing to apply *Glasper*. We disagree.

In *Hammonds*, we found that *Glasper* dictated the rule to follow even under post-amendment cases. *Hammonds*, 399 Ill. App. 3d at 955. We noted that "[t]he 2007 amendment merely increased what fell under the scope of mandatory; and our supreme court in *Glasper* already answered what happens when there is a violation of what is mandatory under the rule, and what happens is a harmless error analysis." *Hammonds*, 399 Ill. App. 3d at 954-55.

Additionally, in *Magallanes*, we noted some of the problems that would arise if we automatically reversed cases for *Zehr* violations. *Magallanes*, 397 Ill. App. 3d at 99. For instance,

> "The trial court may, as in the instant case, fail to ask one of the
> *Zehr* questions, or may fail to ask all four, as in *Blair*. The trial
> court may ask some jurors all of the *Zehr* questions but fail to ask

> all of the jurors. If the defendant testifies, how is he prejudiced by
> the trial court's failure to instruct the jury that they should not hold
> his failure to testify against him? The *Graham-Wilmington* line of
> cases would appear to require automatic reversal in all of these
> factual scenarios." *Magallanes*, 397 Ill. App. 3d at 99.

We also found that the line of cases finding automatic reversal failed to explain "why the defendants in those cases should be rewarded for their failure to ask the trial court to correct its mistake while the defendant in *Glasper*, who did everything a person could do to prevent the court from committing a violation of Rule 431, should lose his argument." *Magallanes*, 397 Ill. App. 3d at 99.

We note that at the time of this decision, *People v. Thompson*, No. 1-07-2891 (July 16, 2009) (unpublished order under Supreme Court Rule 23), is pending before our supreme court. In *Thompson*, the First District, fourth division, in an unpublished decision under Rule 23, held that a violation of Rule 431(b) constituted plain error under the second prong, triggering automatic reversal. Until further instruction from our supreme court to the contrary, we find that the trial court's violation of Rule 431(b) in the case at bar is not subject to automatic reversal under the second prong of plain error and we apply harmless error analysis under the first prong.

When reviewing for plain error, "defendant bears the burden of persuasion as to whether the error was prejudicial to his case; and, if that burden is not met, defendant's conviction will stand." *People v. Willis*, No. 1-08-2609, slip op. at 10 (May 21, 2010), citing *People v. Herron*,

46

215 Ill. 2d 167, 181-82 (2005). We find that defendant has failed to show that the trial court's error was prejudicial to his case, because the evidence was not closely balanced.

In the case at bar, the jury found defendant guilty of predatory criminal sexual assault of a child. Of the three elements to the crime, the only one at issue was that of sexual penetration, because there is no question that defendant was over 17 and the victim was under 13. During the trial, two police officers testified that they saw defendant lying on top of the victim. Both officers testified that defendant and the victim were naked from the waist down, their hips were touching, and the victim's legs were spread. Officer Tait described defendant's buttocks as "moving up and down" in what he stated was a "humping fashion." Officer Beluso characterized the defendant's movement as making a "thrusting motion up and down." Both officers testified that when defendant stood up, he had an erect penis; Officer Tait also noted that defendant's penis was wet. No witnesses testified for the defense. Given the officers' testimony, the evidence was not closely balanced and therefore, there was no plain error.

Based on the record in this case, we find that the trial court's violation of Rule 413(b) was error, but that the error was harmless under the first prong of plain error analysis.

V. Improper Remarks During Closing Argument

Defendant's fifth argument on appeal is that the State denied defendant a fair trial through the use of improper remarks during its closing argument and rebuttal. It is not clear whether this issue is reviewed *de novo* or for abuse of discretion. We have previously made this same observation in both *People v. Phillips*, 392 Ill. App. 3d 243, 274-75 (2009), and *People v. Johnson*, 385 Ill. App. 3d 585, 603 (2008). The Second District Appellate Court recently agreed

with our observation that the standard of review for closing remarks is an unsettled issue. *People v. Robinson*, 391 Ill. App. 3d 822, 839-40 (2009).

The confusion stems from an apparent conflict between two supreme court cases: *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007), and *People v. Blue*, 189 Ill. 2d 99, 128, 132 (2000). In *Wheeler*, our supreme court held that "[w]hether statements made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue this court reviews *de novo*." *Wheeler*, 226 Ill. 2d at 121. However, the supreme court in *Wheeler* cited with approval *Blue*, in which the supreme court had previously applied an abuse of discretion standard. *Wheeler*, 226 Ill. 2d at 121. In *Blue* and numerous other cases, our supreme court had held that the substance and style of closing arguments is within the trial court's discretion and will not be reversed absent an abuse of discretion. *Blue*, 189 Ill. 2d at 128, 132; *People v. Caffey*, 205 Ill. 2d 52, 128 (2001); *People v. Emerson*, 189 Ill. 2d 436, 488 (2000); *People v. Williams*, 192 Ill. 2d 548, 583 (2000); *People v. Armstrong*, 183 Ill. 2d 130, 145 (1998); *People v. Byron*, 164 Ill. 2d 279, 295 (1995). Our supreme court had reasoned that "[b]ecause the trial court is in a better position than a reviewing court to determine the prejudicial effect of any remarks, the scope of closing argument is within the trial court's discretion." *People v. Hudson*, 157 Ill. 2d 401, 441 (1993). Following *Blue* and other supreme court cases like it, this court had consistently applied an abuse of discretion standard. *People v. Tolliver*, 347 Ill. App. 3d 203, 224 (2004); *People v. Abadia*, 328 Ill. App. 3d 669, 678 (2001).

Since *Wheeler*, appellate courts have been divided regarding the appropriate standard of review. The second and third divisions of the First District have applied an abuse of discretion

48

standard, while the Third and Fourth Districts and the fifth division of the First District have applied a *de novo* standard of review. Compare *People v. Love*, 377 Ill. App. 3d 306, 313 (1st Dist. 2d Div. 2007), and *People v. Averett*, 381 Ill. App. 3d 1001, 1007 (1st Dist. 3d Div. 2008), with *People v. McCoy*, 378 Ill. App. 3d 954, 964 (3d Dist. 2008), *People v. Palmer*, 382 Ill. App. 3d 1151, 1160 (4th Dist. 2008), and *People v. Ramos*, 396 Ill. App. 3d 869, 874 (1st Dist. 5th Div. 2009).

However, we do not need to resolve the issue of the appropriate standard of review at this time, because our holding in this case would be the same under either standard. This is the same approach that we took in both *Phillips* and *Johnson*, and the same approach taken by the Second District in its recent *Robinson* opinion. *Phillips*, 392 Ill. App. 3d at 275; *Johnson*, 385 Ill. App. 3d at 603; *Robinson*, 391 Ill. App. 3d at 840. As such, we turn to the merits of defendant's argument.

Defendant argues that the State made a number of improper remarks during its closing argument and rebuttal. However, defendant only properly preserved objections to two statements.[5] Thus, defendant has waived review of any objections to other statements he now attempts to raise, as well as any objection to the cumulative effect of the closing argument. *Wheeler*, 226 Ill. 2d at 122. Nevertheless, closing arguments "must be viewed in their entirety

---

[5] Defendant states in his brief that he objected to one statement in his posttrial motion. However, the posttrial motion contained two objections to the State's closing argument that are applicable here, as well as one that neither party addresses in its brief, so we will consider both relevant objections as properly raised.

and the allegedly erroneous argument must be viewed contextually." *Blue*, 189 Ill. 2d at 128.

"Accordingly, the simple fact that defendant did not properly object to a statement does not render that statement as if it never existed. Indeed, all statements must be considered as part of the entirety of a prosecutor's closing argument, and even statements not properly objected to may add to the context of a remark properly objected to." *Wheeler*, 226 Ill. 2d at 123. Moreover, all of defendant's arguments concerning statements that were not preserved for review relate to the statements that were properly preserved. Thus, all of defendant's arguments regarding the propriety of the closing argument will be considered.[6]

Prosecutors are afforded a great deal of latitude in closing argument. *Wheeler*, 226 Ill. 2d at 123, citing *Caffey*, 205 Ill. 2d at 131. Prosecutors may comment on the evidence and draw reasonable inferences therefrom, as well as dwelling on the " 'evil results of crime' " and urging the " 'fearless administration of the law.' " *People v. Liner*, 356 Ill. App. 3d 284, 295-96 (2005), quoting *People v. Harris*, 129 Ill. 2d 123, 159 (1989). However, a prosecutor may not make an argument that serves no purpose but to inflame the jury. *Blue*, 189 Ill. 2d at 128, citing *People v. Tiller*, 94 Ill. 2d 303, 321 (1982). In reviewing a prosecutor's argument, we consider whether the statements made "engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilty resulted from them." *Wheeler*, 226 Ill. 2d at 123, citing *People v. Nieves*, 193 Ill. 2d 513, 533 (2000). Substantial prejudice occurs "if the improper

---

[6] Defendant urges us to apply plain error analysis to the comments that were not properly preserved. However, we will follow the example in *Wheeler* and simply consider the comments as context instead of reviewing them individually under plain error.

No. 1-08-2891

remarks constituted a material factor in a defendant's conviction." *Wheeler*, 226 Ill. 2d at 123, citing *People v. Linscott*, 142 Ill. 2d 22, 28 (1991).

Defendant's arguments regarding the State's comments fall into two broad categories: (1) that the State attempted to sway jurors by appealing to them to protect a vulnerable group in the community and (2) that the State improperly referred to defendant's potential future criminal activity in an attempt to cause the jury to convict defendant based on fear. Defendant's second argument only concerns one exchange, while his first encompasses the State's entire argument; thus, we will address defendant's second argument first.

Defendant argues that the State encouraged the jury to convict him based on its fears of his potential future criminal activity. His argument is centered around the following comment, made at the beginning of the State's rebuttal:

"PROSECUTOR: This is not a case about police reports.

This is a case that is about twelve year old [KS] and this

Defendant, 23 year old Antonio Raymond. He keeps getting older,

year after year, and his victims keep getting younger. First, in

2002, August 3rd of 2002, he takes [JP] who is then fourteen years

old to a shed.

DEFENSE COUNSEL: Objection, Judge.

THE COURT: Overruled.

51

PROSECUTOR: To a shed where she's with five other people, if you count the Defendant, a group of them. He has sex with her.

Now in 2006 he worked his way down to a 12 year old, [KS]. And the defense wants to ask you where is [KS]. Why isn't she here. Who cares where [KS] is. [KS] is this girl in the picture. She is twelve years old."

Defendant claims that the prosecutor's statement, "He keeps getting older, year after year, and his victims keep getting younger," suggested to the jury that defendant would continue to find even younger victims in the future until he is stopped. Even if the statement did imply that defendant would commit future crimes, that fact does not in itself make the remark impermissible. See *People v. Harris*, 129 Ill. 2d 123, 159 (1989) (finding prosecutor's remarks that defendant was a " 'ticking bomb' " permissible). After considering the content of the statement, we cannot find that the prosecutor's remark rose to the level of reversible error.

Defendant points to the case of *People v. Holman*, 103 Ill. 2d 133 (1984), to support his contention. That case, however, is distinguishable from the case at bar. First, *Holman* concerned the sentencing phase of a capital case, and the decision of whether to execute an individual is significantly different than deciding a defendant's guilt in a noncapital case. See *Holman*, 103 Ill. 2d at 177 (noting that because of the qualitative difference between death and other forms of punishment, courts are more willing to address errors that may have impacted the decision of the sentencing jury). Additionally, the remarks made by the prosecutor in *Holman* went far beyond

what we have in the case at bar. The prosecutor in that case addressed the jury at the sentencing

phase of the defendant's trial, after he had been convicted of several counts of murder, among

other crimes. In arguing for the imposition of the death penalty, the prosecutor made several

comments that our supreme court found to be improper:

> " 'What we have, in effect, done by not imposing capital
>
> punishment in the proper case is to slaughter, ensure that other
>
> innocent people will be killed.
>
> ***
>
> Think about that. You will come down on the side of a
>
> convicted killer, a convicted murderer, and say, no, he should not
>
> be put to death, even though this is the proper case, thereby,
>
> virtually, guaranteeing down the road future innocent victims will
>
> be slaughtered.' " (Emphasis omitted.) *Holman*, 103 Ill. 2d at 162.

Our supreme court found these statements constituted reversible error, holding that the

statements "had no function other than to appeal to the passions and fears of the jury and increase

the likelihood that the sentence it would recommend would be based on emotion rather than on

reason." *Holman*, 103 Ill. 2d at 165.

The comments made in the instant case are not nearly as egregious as those in *Holman*.

Here, the prosecutor was making a comment based on the evidence—defendant was older in the

charged crime than in the prior one, and his victim was younger. Moreover, the context of the

comment lessens any impropriety. The prosecutor did not dwell on any sort of future criminal

activity. Instead, she used the statement as a way to transition into addressing aspects of defendant's closing argument. The prosecutor went from relaying a few facts about the prior crime and stating the victim's age to responding to defendant's comments about the victim not being at trial. We cannot find that this type of incidental statement constituted a material factor in defendant's conviction.

Defendant's other claim of impropriety extends throughout the State's closing argument and rebuttal; he argues that prosecutors made a number of comments aimed at arousing the jury's desire to protect troubled teens. As noted earlier, defendant has waived review of all but one statement, but the others will be considered as part of the context for that statement. In the exchange that was properly preserved, the prosecutor stated:

> "PROSECUTOR: What he was there to do was to have sex
>
> with [KS]. Somebody who is his type. He likes young girls. [JP]
>
> was 14. [KS] was 12. He likes busty girls. Kind of chunky girls.
>
> You saw [JP] up there. You will see the picture of [KS].
>
> He likes girls that are troubled, that are run-aways.
>
> DEFENSE COUNSEL: Objection.
>
> THE COURT: Sustained.
>
> PROSECUTOR: [JP] ran away from her youth home. [KS]
>
> ran away from home. He likes girls who are troubled so he can
>
> turn --
>
> DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

PROSECUTOR: He likes girls that he can turn into the

woman that he wants. That's what he was trying to do that day."

We cannot find that the prosecutor's statement that defendant "likes girls who are troubled" was improper. We find nothing to suggest that the prosecutor was attempting to portray "troubled" girls as a class that needed protection; instead, it is clear that the prosecutor is drawing parallels between JP and KS specifically. As noted, prosecutors are allowed to draw reasonable inferences from the evidence at trial. *Blue*, 189 Ill. 2d at 128. Here, the evidence showed that JP was in DCFS custody and that she was considered a "runaway." Additionally, the evidence established that KS skipped school on the day that she met defendant, and her mother reported her missing to the police. The prosecutor was allowed to comment on these facts, and was allowed to make the reasonable inference that based on the facts, the girls were both "troubled." Moreover, both JP's status as a runaway and the fact that KS' mother called the police when she discovered her daughter was not at school were brought out by the defense during cross-examination. Defendant cannot be heard to complain now about either an argument that he invited or testimony that he elicited. *Glasper*, 234 Ill. 2d at 205 ("Defendant cannot complain that the State made reference to evidence in closing which defendant helped elicit"). Thus, standing alone, the statement is not problematic.

However, defendant would also like us to consider several occasions in which the State referred to "troubled teens," "young girls," or "pink sheets." Defendant argues that these

comments, taken with the State's multiple references to the victim's youth, were aimed at encouraging the jury to consider troubled teens as a vulnerable group that deserved protection.

First, defendant takes issue with a comment that the prosecutor made when she was describing Officer Tait's testimony:

"Officer Taitt [*sic*] went to the room on that second floor.

You know what, it turned out to be this lovely bedroom. Sort of an

oasis in that abandoned building isn't it. See the pretty pink sheets

on the bed, see the stuffed animals strewn about the bed. Things

that little girls like."

Defendant argues that the mention of pink sheets and stuffed animals, taken with the State's references to "troubled teens," were aimed at inflaming the jury's passions. We cannot agree.

Defendant overstates the record when he claims that "[f]ollowing the added detail of 'troubled teen,' the State's portrait was complete, creating in the mind's [*sic*] of the jury a troubled young girl resting between her pink sheets, hugging a stuffed animal and vulnerable to the advances of a sexual predator like Raymond." The State made one brief reference to pink sheets and stuffed animals, when the prosecutor was discussing the sequence of events. Moreover, two photographs of the room in which the victim and defendant were discovered were introduced into evidence, so the jury was able to see for themselves that the room had pink sheets and stuffed animals. The only embellishing remark that the prosecutor made was that the sheets and animals were "[t]hings that little girls like." We recognize that if the State's closing had been filled with such references, it could have been improper, but we cannot find that the single

56

statement that "little girls like" pink sheets and stuffed animals did anything to deny defendant a fair trial.

Additionally, the State did not reference "troubled teens" with the frequency that defendant suggests. In her closing argument, the prosecutor said the phrase "troubled teens" once. The defense objected, the objection was sustained, and the prosecutor ended her argument. Later, during the State's rebuttal, the prosecutor said the word "troubled" twice, repeating the word only because her statement was interrupted by an objection.

As we have stated above, we cannot find that the prosecutor was attempting to portray a class of vulnerable teens when she called JP and KS "troubled" in her rebuttal. The fact that the prosecutor began the same argument but abandoned it during the State's closing does not change that result.

Finally, defendant objects to the frequent use of terms such as "young girl," which he argues impermissibly encouraged the jury to convict defendant in order to protect the victim's age group. In support of his contention that it is error for a prosecutor to emphasize the victim's age, defendant cites *People v. Clark*, 335 Ill. App. 3d 758 (2002), *People v. Liner*, 356 Ill. App. 3d 284 (2005), and *People v. Schneider*, 375 Ill. App. 3d 734 (2007). However, these cases are inapposite.

In *Clark*, the Third District Appellate Court considered whether the prosecutor's references to the victim's age were improper. The complained of comments included:

" 'This case is particularly disgusting in that America has had a tradition of trying to gently treat our elderly. Mrs. Homer told you she was born in 1919. What is she--81 years old?

Do our 81-year old [*sic*] citizens deserve the protection of the criminal justice system? I submit to you that they do. If we don't protect our elderly; [*sic*] who do we protect?' " *Clark*, 335 Ill. App. 3d at 764.

The prosecutor also brought up the victim's age several more times during his closing argument. *Clark*, 335 Ill. App. 3d at 764-65.

The *Clark* court held that the references to the victim's age were unacceptable. *Clark*, 335 Ill. App. 3d at 765. It noted: "We see no possible purpose to these comments other than to inflame the passions of the jury. *** Far from mere references to the victim's age, the State repeatedly asserted that the elderly were a class in need of protection. In essence, the State argued that the victim was a member of a class with which we, as a society, are sympathetic and that the defendant should be convicted because of the need to protect this class." *Clark*, 335 Ill. App. 3d at 765.

Similarly, in *Liner*, the Fifth District Appellate Court considered whether a prosecutor's comments regarding the young age of the victim should be allowed. The prosecutor in that case remarked:

" 'Kayla Baker[-]when someone comes into her house in the winter time, the guy ought to be having a white beard and a bag

58

of toys, not a .22[-]caliber revolver that he shoved into her face.

\*\*\* And now it's your job to convict him. And when you convict

him, you make this whole country safe for all the Kayla Bakers that

have a right to be asleep in their own home without having a guy

like that come in and shove a gun in her face.

\* \* \*

This county, and particularly little girls like Kayla Baker,

have [*sic*] a right to be protected by their father when he can. And

he almost died protecting her. \*\*\* She's got the right to be

protected by the prosecutors \*\*\*. And she's got the right to be

protected by the juries in Madison County. And when you find the

Defendant guilty of Armed Robbery and Home Invasion, you're

not just protecting Kayla Baker. You're protecting every child and

every citizen in every home in this county.' " *Liner*, 356 Ill. App.

3d at 296-97.

Like the *Clark* court, the *Liner* court found that the prosecutor's comments had no purpose other

than to inflame the passions of the jury. *Liner*, 356 Ill. App. 3d at 297. It held that "[t]he

prosecutor interjected matters that had no real bearing upon the present case and sought to incite

the jury to act out of undifferentiated passion and outrage, rather than reason and deliberation."

*Liner*, 356 Ill. App. 3d at 298.

No. 1-08-2891

The Second District Appellate Court in *Schneider*, while not considering the issue of the victim's age, likewise held that irrelevant issues were improper topics for closing argument. The prosecutor in that case stated:

" 'Put all of this evidence together as a whole. The human condition. Now I am going to ask you to send this Defendant a message: Prostitutes can be raped. Sherry [S.] was raped in this case because all the evidence has proven it. I am going to ask you now to reach deep down and be human and have some compassion for someone who does have some dignity to protect. This Defendant tried to strip her of her last vestige of human dignity. You can help restore that dignity with your verdict.' " *Schneider*, 375 Ill. App. 3d at 754.

The court held that the statements were not based on the evidence at trial, nor on a reasonable inference from any evidence. *Schneider*, 375 Ill. App. 3d at 755. "Moreover, these issues were irrelevant to whether defendant was guilty or innocent." *Schneider*, 375 Ill. App. 3d at 755. Thus, the statements made by the prosecutor were improper. *Schneider*, 375 Ill. App. 3d at 755.

One significant difference between the instant case and the cases cited by defendant is that in those cases, the age of the victim was irrelevant. For instance, in both *Liner* and *Clark*, the defendant was charged with home invasion and armed robbery. *Liner*, 356 Ill. App. 3d at 286; *Clark*, 335 Ill. App. 3d at 760. The age of the victim was simply not relevant to the determination of whether a defendant is guilty of either of those crimes. In the instant case,

60

however, both the age of the victim and the age of defendant were relevant. The State actually needed to prove that the victim was over 13 and that defendant was over 17. Thus, the fact that the prosecutors mentioned the victim's age, even a number of times, is not improper.

Additionally, the context of the remarks is completely different in the instant case because in the cases that defendant cites, the prosecutor explicitly asked the jurors to make a decision on some basis other than the evidence. In *Schneider*, the prosecutor asked the jury to " 'send this Defendant a message' " and " 'reach deep down and be human and have some compassion for someone who does have some dignity to protect.' " *Schneider*, 375 Ill. App. 3d at 754. The *Clark* prosecutor said that " 'America has had a tradition of trying to gently treat our elderly' " and asked the jury, " 'Do our 81-year old [*sic*] citizens deserve the protection of the criminal justice system? I submit to you that they do. If we don't protect our elderly; [*sic*] who do we protect?' " *Clark*, 335 Ill. App. 3d at 764. The prosecutor in *Liner* urged the jury: " 'when you find the Defendant guilty of Armed Robbery and Home Invasion, you're not just protecting Kayla Baker. You're protecting every child and every citizen in every home in this county.' " *Liner*, 356 Ill. App. 3d at 297.

In the instant case, the State never made such a request of the jury. Instead, all references to the victim and the victim's age came in the context of explaining the elements of the crime or describing what the officers saw. The comments that come closest to the examples cited above came at the beginning and end of the State's closing argument. The prosecutor began by stating:

"Ladies and gentlemen, at times laws are designed to protect those who cannot protect themselves, from those who are too immature, either physically or emotionally.

Twelve year old girls fall into that category. That's why there is a legislative difference between predatory criminal sexual assault and rape. They are two completely different things."

At the end of the State's rebuttal, the prosecutor said:

"[W]e as a society have drawn a line in the sand. We have drawn the line at thirteen. We say under the age of thirteen, that's a different ballgame than people over the age of thirteen. We're not talking about a sixteen year old and a seventeen year old, close in age. One had a birthday, turned seventeen, and the other one didn't. That's not it.

We're talking about a twelve year old. That's where the line in the sand is. Our law doesn't allow people to claim that that eight year old, boy, she looks thirty. That five year old, she's turning forty-five next month. Our line in the sand is at twelve.

* * *

We'd ask you to abide by that line in the sand and go back and consider the evidence and to find this Defendant guilty of predatory criminal sexual assault with a child."

However, these comments do not encourage the jury to make a decision based on passion but instead simply refer to the elements of the crime. The first comment led to an explanation of the differences between predatory criminal sexual assault of a child and rape; the second merely emphasized that the legislature has chosen to treat sexual assaults with victims under age thirteen differently than sexual assaults with victims over age thirteen. Neither is impermissible in the context it was used.

Standing alone, the comments that defendant properly objected to did not amount to reversible error. Although defendant failed to raise objections to other comments made during closing argument, we have considered them as context for the properly preserved objections. Based on the entirety of the closing arguments, we cannot find that the State's comments engendered substantial prejudice in defendant's trial.[7]

As a final note, any erroneous comments in the case at bar would have been cured when the jury was instructed that closing arguments were not evidence. Before proceeding with closing arguments, the trial court informed the jury: "Both sides have rested. We're now proceeding with what's called closing arguments. They are not evidence. They are statements made by the attorneys reflecting on what they believe the evidence has shown." In addition, during her closing argument, the prosecutor stated:

---

[7] Defendant also raises an argument that erroneously overruling his objections amplified the prejudicial nature of the comments. However, as we do not find the statements prejudicial, we cannot find that they were amplified by the trial court's overruling defendant's objections.

"Now, the Judge is also going to tell you and make it very

clear, the only evidence that you are allowed to consider when you

are in that room deliberating is what came out of the mouths of the

witnesses who got up on this stand, sat in that chair and swore to

tell the truth. Not the attorney's questions, not the arguments of

the attorneys. Only what was testified to from that witness stand."

The trial court also gave an additional instruction after closing arguments reinforcing the

statement that neither opening statements not closing arguments were evidence and ordering the

jury to disregard any statement or argument made by the attorneys that was not based on the

evidence. Thus, the jury was properly instructed and defendant was not denied a fair trial due to

the State's remarks.

## VI. Excessive Sentence

Defendant's final argument on appeal is that the trial court's sentence of 20 years

imprisonment was excessive. The Illinois Constitution requires penalties to be determined "both

according to the seriousness of the offense and with the objective of restoring the offender to

useful citizenship." Ill. Const. 1970, art. I, §11. Balancing these retributive and rehabilitative

purposes of punishment "requires careful consideration of all factors in aggravation and

mitigation, including, *inter alia*, the defendant's age, demeanor, habits, mentality, credibility,

criminal history, general moral character, social environment, and education, as well as the

nature and circumstances of the crime and of defendant's conduct in the commission of it."

*People v. Center*, 198 Ill. App. 3d 1025, 1033 (1990). However, the mere fact that a reviewing

court might have weighed the factors differently than the trial court does not justify an altered sentence. *People v. Grace*, 365 Ill. App. 3d 508, 512 (2006).

Instead, a trial court's sentencing decisions are entitled to great deference and will not be disturbed absent an abuse of discretion. *People v. Spicer*, 379 Ill. App. 3d 441, 465 (2008), quoting *People v. Jackson*, 375 Ill. App. 3d 796, 800 (2007). " 'A sentence which falls within the statutory range is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense.' " *Spicer*, 379 Ill. App. 3d at 465, quoting *Jackson*, 375 Ill. App. 3d at 800.

Defendant was convicted of predatory criminal sexual assault of a child, which is a Class X felony. 720 ILCS 5/12-14.1 (West 2008). Under section 5-4.5-25 of the Unified Code of Corrections, Class X felonies are punishable by a sentence of not less than six years and not more than 30 years.[8] 730 ILCS 5/5-4.5-25 (West 2008). At defendant's sentencing hearing, the trial court considered a presentence investigation report, as well as testimony regarding the uncharged

---

[8] We note that the legislature amended the provision of the predatory criminal sexual assault statute governing defendant's sentencing between the time of defendant's offense and sentencing. The amended statute provides that "A person convicted of a violation of section (a)(1) commits a Class X felony, *for which the person shall be sentenced to a term of imprisonment of not less than 6 years and not more than 60 years.*" (Emphasis added.) 720 ILCS 5/12-14.1(b)(1) (West 2008) (emphasis indicates language added by Public Act 95-640 (Pub. Act 95-640, June 1, 2008)). Because both parties argued based on the prior statute, we will also consider the sentencing range to be 6 to 30 years instead of the current 6 to 60 years.

criminal assault against SM and arguments from both parties. Defendant also told the court that he was sorry for his crime.

When imposing the sentence, the trial court considered a number of factors. In its ruling, the court noted that defendant was sorry for his actions and that defendant "never really had a chance" because of his home environment. The court also considered defendant's criminal history, including three prior felony convictions, and noted that defendant was given an opportunity for rehabilitation when he received probation for one conviction, but that the probation was terminated unsatisfactorily. The trial court further specifically stated that the evidence regarding SM would be given little weight. The trial court then found:

> "Again, taking your criminal history, your social history
>
> into consideration, and all the factors set out in the statute, it is for
>
> the protection of society and young women throughout our state,
>
> country, that the sentence of this Court is 20 years in the Illinois
>
> Department of Corrections."

Defendant immediately filed a motion to reconsider the sentence, which the trial court denied, stating that the sentence "is not excessive in light of your background and your participation in the offense, you being the actual offender in this case."

Defendant does not appear to challenge any specific part of the trial court's reasoning. Instead, defendant puts forth three factors that he claims render his sentence excessive: (1) he believed that the victim was 19 years old, (2) he does not possess a violent background, and (3) his previous longest sentence was four years. We find none of these arguments persuasive.

Initially, the State claims that defendant has waived review of these issues because they were not mentioned in defendant's motion for reconsideration. Defendant's motion to reconsider his sentence stated: "This sentence is excessive in view of the Defendant's background and the nature of his participation in the offense." The State argues that defendant's motion does not set forth sufficient detail as to the reasons why the sentence was excessive, while defendant claims that by mentioning "the Defendant's background and the nature of his participation in the offense," the issue was properly preserved. We find defendant's motion sufficiently raised the issues relating to his criminal history but did not properly preserve the issue as to defendant's belief of the victim's age. See *People v. Pippen*, 324 Ill. App. 3d 649, 652 (2001) (finding that a reference to "the nature of [the defendant's] prior convictions and his plea of guilty" did not sufficiently preserve sentencing issues raised on appeal). Nevertheless, even were all of defendant's arguments considered, we would still be unable to find that the trial court abused its discretion.

First, defendant argues that he believed that the victim was 19. However, defendant's belief as to the victim's age was not introduced as evidence at trial because it was barred under a motion *in limine*, and defendant did not raise that argument at the sentencing hearing as a mitigating factor, so the court was not obligated to consider it. See 730 ILCS 5/5-4-1(a)(4) (West 2008) (At the sentencing hearing, the court must "consider evidence and information offered by the parties in aggravation and mitigation"). Moreover, the trial judge was present throughout the trial and heard defendant's arguments as to mistake of age during the State's motion to bar the defense and so would have been aware of defendant's belief as to the victim's age.

67

Additionally, defendant argues that none of his crimes involved force, and that his longest sentence prior to the current one was four years. The mere fact that defendant did not use force in any of his prior crimes does not automatically mean that he should be entitled to a shorter sentence. Drug offenses and sexual assaults on children are not crimes because they involve the use of force; they are crimes because they involve conduct that the legislature has deemed unacceptable in society. Moreover, defendant's prior sentences actually cut in favor of a long sentence. As the trial court noted, defendant was given an opportunity for rehabilitation when he was sentenced to probation following his first drug-related conviction. Defendant did not take that opportunity to rehabilitate, and his probation was terminated unsatisfactorily. Following that conviction, defendant was sentenced to four years for his second drug-related offense, and was sentenced to four years following his crime against JP. Less than four years after pleading guilty to assaulting JP, defendant committed the instant offense. Clearly, his jail sentence did not rehabilitate him.

We cannot find that the trial court abused its discretion in sentencing defendant to 20 years in prison. A sentencing judge is presumed to have considered all relevant factors, including evidence of mitigation, unless the record affirmatively shows otherwise. *People v. Chirchirillo*, 393 Ill. App. 3d 916, 927 (2009), citing *People v. Hernandez*, 319 Ill. App. 3d 520, 529 (2001). There is nothing in the record showing that the trial court failed to consider any factor in mitigation, and the only thing that the trial court specifically gave little weight to was an aggravating factor—defendant's possible involvement in the assault on SM. The lack of force present in defendant's prior crimes was specifically brought up by defense counsel during the

sentencing hearing, and the trial court would have been able to see the length of defendant's prior sentences by looking at defendant's criminal history. The fact that defendant does not approve of the weight given to the mitigating factors does not mean that the trial court did not properly consider them in imposing defendant's sentence. See *Pippen*, 324 Ill. App. 3d at 652 ("The existence of mitigating factors does not require the trial court to reduce a sentence from the maximum allowed"). Thus, we cannot find that the trial court's sentence constituted an abuse of discretion.

CONCLUSION

For the foregoing reasons, we affirm defendant's conviction. We find that, first, a rational trier of fact could have found that the State proved the element of sexual penetration beyond a reasonable doubt. Second, the trial court correctly denied defendant the opportunity to present the mistake of age defense. Third, the trial court did not abuse its discretion in allowing evidence of defendant's prior conviction for aggravated criminal sexual abuse to be used to show defendant's propensity to commit sex crimes. Fourth, the trial court erred by not instructing the jury that defendant was not required to present evidence on his own behalf, but that error was harmless in light of the overwhelming evidence of defendant's guilt. Fifth, the State did not deny defendant a fair trial through the use of improper remarks. Sixth, the trial court did not abuse its discretion by imposing a sentence of 20 years' imprisonment.

Affirmed.

J. GORDON and McBRIDE, JJ., concur.