# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Woods*, 2011 IL App (1st) 091959

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROSCOE WOODS, Defendant-Appellant. |
| District & No. | First District, Second Division<br><br>Docket No. 1–09–1959 |
| Filed | May 31, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for aggravated battery with a firearm and attempted first degree murder arising from a gang-related shooting were upheld over his contentions that State violated Supreme Court Rule 412 by failing to disclose alleged prior statement of its rebuttal witness, that trial court erred in allowing State to present other crimes evidence in rebuttal and by violating Supreme Court Rule 431(b), that he was denied a fair trial by the prosecutor's comments in closing argument and that his mittimus should be corrected to add seven days of presentence credit, since defendant failed to carry his burden of proving he was prejudiced by State's failure to disclose rebuttal witness's prior statement, objection to other crimes evidence would not be considered under plain error doctrine where there was no error, defendant conceded issue of alleged violation of Rule 431(b) in his reply brief, and he was unable to show any substantial prejudice in State's closing and rebuttal closing arguments, but State conceded that defendant was entitled to additional seven days of presentence credit. |

| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07–CR–1130; the Hon. Stanley J. Sacks, Judge, presiding. |
|---|---|
| Judgment | Affirmed; mittimus corrected. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Rachel M. Kindstrand, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Ashley A. Romito, and Annette Collins, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Cunningham and Justice Karnezis concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a jury trial defendant, Roscoe Woods, was convicted of one count of aggravated battery with a firearm and one count of attempted first degree murder. He was sentenced to 33 years in prison, which included an enhancement based on his personal discharge of a firearm causing bodily harm. On appeal, he argues that the State violated Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001) by not disclosing an alleged prior statement of its rebuttal witness, Rosalinda Taufique. He urges this court to excuse his procedural default and review, under the plain error doctrine: whether the trial court erred in allowing the State to present other crimes evidence in rebuttal; whether the trial court violated Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) when instructing the jury; and whether he was denied a fair trial by several comments made by the prosecuting attorney during closing argument. Additionally, defendant argues, and the State agrees, that he is entitled to an additional seven days of presentence credit. We hold that defendant has not carried his burden of proving that he was prejudiced by any alleged Rule 412 violation. Defendant has also not shown plain error and therefore we decline to excuse defendant's procedural defaults and review on the merits whether the trial court erred in allowing other acts evidence in rebuttal; whether the trial court violated Rule 431(b); and whether the State's closing and rebuttal closing arguments were improper. We agree with both parties that defendant's mittimus should be corrected to reflect 854 days of presentence credit.

¶ 2                                JURISDICTION

¶ 3 The circuit court denied defendant's motion to reconsider his sentence on June 16, 2009. Defendant timely filed his notice of appeal on July 15, 2009. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 603 (eff. Oct. 1, 2010); R. 606 (eff. Mar. 20, 2009).

¶ 4                                              BACKGROUND

¶ 5 On December 11, 2006, Chicago police officer Lee Trevino was shot and injured on Division Street in Chicago, Illinois, after responding to a disturbance at nearby Clemente High School. On the first day of defendant's trial, the State filed a motion *in limine* seeking to introduce evidence that before the shooting, at approximately 8 a.m., and in the same general area of the incident, defendant approached Terrell Durham. Durham would testify that defendant had in his waistband a silver-colored pistol and said to Durham, "What you be about Cobra" and Durham responded that he was not a Cobra, but a member of a different gang. Defendant then walked away saying he did not have a problem with Durham. The State argued that this other crimes evidence was relevant to establish defendant's intent in firing the gun, his motive in firing the gun, and defendant's state of mind. The State additionally argued that the other crimes evidence was relevant to negate the defenses of an innocent frame of mind, mistake, necessity and self-defense.

¶ 6 Defendant's counsel argued that the incident was not relevant and that it was prejudicial. Specifically, defense counsel stressed that the shooting and the evidence of other crimes were two separate incidents occurring at different times of the day and that the evidence was prejudicial because, from it, the jury could infer that defendant was predisposed to violence on the day of the shooting. In ruling on the motion, the trial court pointed out that defendant had raised two possible affirmative defenses, self-defense and necessity. The trial court barred the evidence as inadmissable in the State's case-in-chief, but cautioned that it may be admissible during rebuttal if the defendant opened the door, specifically "depending on what the defense offers or brings out on his examination of the witnesses."

¶ 7 Officer Michael Komo testified for the State that at about 2:30 p.m. on the day of the shooting, he received an assignment that there was a disturbance at the bus stop at the intersection of Division Street and Western Avenue near Clemente High School. He testified that he and Officer Lee Trevino were in uniform and drove a marked police car to the area near the bus stop, where they parked. He testified that the primary gangs operating in the area are the Spanish Cobras and the Maniac Latin Disciples, who "don't get along," and that he saw Spanish Cobra gang signs being "thrown up." He saw six kids fighting and then run westbound on Division Street past their marked police car. He stated that the kids continued fighting, shoving each other, "throwing up gang signs," and shouting gang words at each other. The two officers approached the 6 kids fighting while 30 other people were on the street. He was 15 to 20 feet from the fight and then identified himself as a Chicago police officer and shouted "get out of here, break it up," while waving his baton. He identified

-3-

defendant as one of the kids fighting and testified that defendant was wearing a coat about thigh length with fur around the collar. When he shouted for the crowd to disperse, the six kids fighting looked at him and then ran. Defendant ran away from him on Division Street, and as he passed Campbell Street, defendant turned around, reached in his waistband, and produced a gun. As defendant was facing Officer Komo, he fired five or six shots in Officer Komo's direction. Officer Trevino was hit in the arm and shouted "I'm hit." Both officers took cover behind a parked car. He testified that after the shooting, he saw spent cartridges on the ground where defendant had fired his gun.

¶ 8        Danate Barnes testified for the State that he was in the area and saw the fight. He identified defendant, whom he knew as "Nu-Nu," as a member of the Maniac Latin Disciples gang. Barnes did not know defendant's real name. Barnes testified that defendant and another Maniac Latin Disciples's gang member, "Buckaroo," walked past members of the Spanish Cobras gang. The Spanish Cobras, defendant, and Buckaroo were verbally insulting each other. Defendant and Buckaroo walked away from the Spanish Cobras, but the Spanish Cobras followed them. Barnes testified that at some point the altercation turned physical, but that he ran away because he heard gunshots.

¶ 9        Kenyon Taylor testified for the State that on the day of the incident, he was at his girlfriend's house, which is approximately four blocks away from Clemente High School. Taylor testified he knew defendant because he was friends with defendant's cousin. He testified that both defendant and defendant's cousin were members of the Maniac Latin Disciples gang. On the day of the incident, defendant rang the doorbell and Taylor answered. Taylor described defendant's appearance as "rough," "scared," and "nervous." Defendant was wearing a black coat with fur on it. Defendant stated to Taylor that he was "in a jam," that he might have shot a police officer, and he asked Taylor to stash a black handgun for him. Taylor refused.

¶ 10       The State also called Torrey Davis, who had previously given a written statement to the police and testified before a grand jury. At trial, Davis's testimony was significantly different from his written statement and his testimony before the grand jury. At trial, Davis identified defendant, whom he knew both as Roscoe Woods and as "Nu-Nu." He testified that he did not know if defendant was a member of the Maniac Latin Disciples gang. Davis testified that he saw a Hispanic man fighting with an African-American man in the street and that they were the only two individuals fighting in the street. He testified he also saw a Hispanic man with a silver gun in the alley. Davis testified that the man with the silver gun had a mask over his face. Davis denied seeing defendant fighting, running, or shooting. Davis was questioned extensively on his earlier statements to the police and the grand jury, which were significantly different than his in-court testimony.

¶ 11       Assistant State's Attorney (ASA) Susan Jakubiak testified for the State in order to read into evidence Torrey Davis's written statement, which he had provided a few days after the shooting. The relevant portions of Davis's statement, as read into evidence through ASA Jakubiak, are as follows. Davis was 14 years old at the time of the incident and stated that he socialized with the Maniac Latin Disciples gang, but was not actually in the gang. Davis knew defendant as "Nu-Nu" and knew that he was a member of the Maniac Latin Disciples gang. Davis stated that at the time of the incident, he saw defendant with "Buckaroo, G-

Money, and Little Feasy." Davis was walking with defendant and the other three individuals when a Spanish Cobra gang member walked up to them and asked if they were Maniac Latin Disciples. The Spanish Cobra then took off his shirt and curled his index finger to appear as though he was pulling the trigger of a gun. Davis did not see a gun on the Spanish Cobra, but he believed that the Spanish Cobra was signaling for someone to bring him a gun. Six other Spanish Cobras joined the original Spanish Cobra. He started running with defendant and the other three individuals. More Spanish Cobras appeared and defendant pulled a black gun out of his waistband and held it out like he was going to shoot. He told defendant not to shoot because there was a little girl present. Defendant then put the gun in his pocket and the group ran about four more steps, before Buckaroo said to defendant; "Why are you running, don't you got the banger?" Defendant then pulled the gun out of his pocket, stopped, and turned around. Davis heard five or six shots coming from defendant's direction. ASA Jakubiak testified that at the time he gave his statement, Davis never told her about a Hispanic gentleman with a silver handgun on the street.

¶ 12    ASA Sabra Ebersole testified regarding Davis's testimony before the grand jury, which was substantially similar to the written statement he provided to ASA Jakubiak. ASA Ebersole testified that Davis never told her about a Hispanic man with a silver gun.

¶ 13    The State also offered testimony from Detective Steven Suveda, who examined the crime scene and presented the expert testimony of Marc Pomerance, an expert in the field of firearms identification from the Illinois State Police Division of Forensic Sciences.

¶ 14    The State's final witness was the victim in this case, Officer Trevino. Officer Trevino's testimony was substantially similar to Officer Komo's regarding driving to the scene of the fight, the number of people fighting, and the location of the fight. He testified that during the incident he was focused on a Hispanic man who had his shirt off and was flashing gang signs. The next thing he remembers was that he heard five or six shots fired from in front of him in quick succession. He did not see who fired the shots. After he was hit by one of the shots, he and Officer Komo retreated for cover behind a parked car.

¶ 15    Defendant testified on his own behalf. He stated that at approximately 2:30 p.m. on the day of the incident, he got off the bus at the intersection of Division Street and Western Avenue en route to his grandmother's house, which was three or four blocks from the bus stop. He said that as he got off the bus, there was a crowd of people asking him if he was a Maniac Latin Disciple. He told the crowd that he was not a Maniac Latin Disciple and kept walking. He said that one of the people in the crowd accused him of being a Maniac Latin Disciple because defendant's cousin was a member of the Maniac Latin Disciples. He knew of the gang, but he was not a member of the gang. Defendant's cousin was killed a month earlier on his grandmother's porch. As defendant was walking, a few of his cousin's friends, "Little Feasy, G-Money, and Buckaroo," were standing by the bus stop and told him they would walk with him for safety. As defendant's group was walking, another group of people approached them from the front and said, "y'all Maniacs." Defendant testified that Little Feasy replied and a fight ensued. Defendant continued walking despite the ongoing fight, until some more Hispanic men stopped him. He saw one of them signal for a gun and then run away. Defendant next saw someone coming out of the alley and running toward him with a silver gun. Defendant ran, but when the man with the silver gun aimed at him, defendant

shot his gun. He testified that when he shot the gun, his head was facing forward to see where he was running and the gun was behind him. He did not look back or see where the gun was pointed. He testified that he was scared he was going to get shot because his cousin had recently been killed. He denied telling Kenyon Taylor that he may have shot a police officer. He also denied participating in the fight because he was running away from it. Defendant testified that he was not in the area on the morning of the incident and that he did not have any contact with Terrell Durham.

¶ 16    After the defense rested, the State renewed its motion *in limine* to call Terrell Durham in rebuttal to negate defendant's claims of self-defense, necessity, and lack of mistake. Defense counsel argued that defendant's testimony was vague at best regarding whether he was in the area at that time of the incident. Defense counsel also argued that too much time separated the two incidents. The trial court allowed the State to call Durham, reasoning that the evidence was permissible to show defendant's intent and motive and the absence of mistake. In addition to Durham, the State called Rosalinda Taufique and Detective Michael Landano in rebuttal. The prosecutor informed the court that the detective was to testify to a conversation he had with defendant at the time of his arrest and that Taufique was going to testify that she saw the shooting. Specifically, her testimony would contradict defendant's testimony as to the position of his body at the time of the shooting. Defense counsel objected to Taufique's testimony, arguing that it would be cumulative to Officer Komo's testimony, that the State had an opportunity to bring Taufique's testimony in during its case-in-chief, and that her testimony would not specifically rebut defendant's testimony. Defense counsel also argued that the State violated discovery rules by not tendering Taufique's statement regarding the positioning of the shooter to the defense. The State argued that the reports disclosed that Taufique observed a male with a gun discharging the weapon as he ran past her store. The court overruled defendant's objection, allowing Taufique to testify, consistent with the police report, that she saw the shooting.

¶ 17    Rosalinda Taufique testified that on the day of the incident, she was in her store on Division Street. She saw, out of her window, people running, and then one of them stopped, turned, and fired five shots. Taufique indicated that the shooter's left elbow was bent and his right arm was across the left arm. Taufique recalled the shooter was an African-American male, but she could not see his face. She could not identify the shooter, except that he had on a black long coat. On cross-examination, Taufique testified that she did not tell the police the manner in which the shooter shot the gun the first time she was interviewed, but she gave them that information during her second interview.

¶ 18    Terrell Durham testified that at 8 a.m. on the morning of the incident, defendant, whom he knew as "Sto," said to him "what you be about Cobra" and showed him a silver-colored pistol on his waist. Durham identified defendant in open court. Durham testified that he responded that he was a "G.D.," and defendant responded, "My problem is not his." Durham interpreted this to mean that defendant did not have a problem with him.

¶ 19    Detective Landano was the State's final rebuttal witness. Detective Landano testified that shortly after defendant's arrest, defendant denied shooting a gun or even having a gun. Detective Landano also testified that defendant did not tell him that he saw a Hispanic male with a gun.

¶ 20 Following closing arguments, the jury found defendant guilty of attempted murder and aggravated battery with a firearm. The jury also found defendant personally discharged a firearm causing severe bodily injury. The sentencing court sentenced defendant to 33 years for attempted first degree murder.

¶ 21 Defendant filed a motion for a new trial pursuant to section 116–1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116–1 (West 2008)). Relevant to this appeal, defendant argued that the trial court erred in allowing Rosalinda Taufique to testify as a rebuttal witness. Defendant argued that Taufique's testimony did not rebut defendant's testimony but, instead, improperly added additional evidence that was available for the State to use in its case-in-chief. Defendant argued further that Taufique's testimony severely prejudiced him and denied him a fair trial. The trial court denied defendant's motion, finding Taufique's testimony to be proper rebuttal testimony.

¶ 22                                    ANALYSIS

¶ 23 On appeal, defendant argues that the State violated Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001) by not disclosing the specific statement as to the substance of the testimony of its rebuttal witness, Rosalinda Taufique. Defendant also argues that this court should review the following issues under the plain error doctrine: whether the trial court erred in allowing other acts evidence through the State's rebuttal witness; whether the State violated Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) when instructing the jury; and whether several comments made by the prosecution during closing argument denied him his right to a fair trial. Defendant also argues, and the State agrees, that he is entitled to an additional seven days of presentence credit.

¶ 24                      Illinois Supreme Court Rule 412

¶ 25 Defendant argues that the State violated Illinois Supreme Court 412 by not disclosing a specific statement as to the substance of rebuttal witness Rosalinda Taufique's testimony. The State disclosed Taufique as a potential witness before trial and provided the police reports in which Taufique stated she observed an African-American man shooting a gun in front of her store on the day of the incident. At trial, defendant objected, arguing that the State did not disclose the manner in which the man Taufique observed shot the gun, specifically whether the man she observed stopped, turned, and shot. On appeal, defendant argues that the State was required to disclose the specificity of Taufique's statement and that the State's failure to do so mandates a new trial.

¶ 26 Rule 412 provides that, "If the State has obtained from the defendant, pursuant to Rule 413(d), information regarding defenses the defendant intends to make, it shall provide to defendant *** a specific statement as to the substance of the testimony such witnesses will give at the trial of the cause." Ill. S. Ct. R. 412(a) (eff. Mar. 1, 2001). Thus, under Rule 412(a), the State must tender to defendant the identity of a rebuttal witness and a specific statement regarding the substance of that witness's testimony. *Id.*; *People v. McCullum*, 386 Ill. App. 3d 495, 512 (2008) ("the plain language of the rule requires the State to disclose the identity of rebuttal witnesses and a specific statement as to the substance of the testimony of

the witnesses") However, "[c]ase law recognizes that the identity or specific testimony of rebuttal witnesses may not be known until a defendant presents his case, and, therefore, the proper procedure is for the State to provide this information when the intention is formed." *McCullum*, 386 Ill. App. 3d at 512; see also *People v. Hood*, 213 Ill. 2d 244, 259 (2004). Although the requirements of discovery are mandatory, reversal is not required unless surprise or undue prejudice has been shown. *People v. Robinson*, 157 Ill. 2d 68, 78 (1993). Defendant has the burden of showing prejudice or surprise. *Id.* Whether rebuttal testimony is admitted into evidence is a matter within the discretion of the trial court and will not be reversed unless the trial court abuses that discretion. *People v. Whitlock*, 174 Ill. App. 3d 749, 777 (1988).

¶ 27 Our review of the record shows the State disclosed to defendant police reports stating Taufique saw a man shooting as he ran past her store. Her details of the shooter having stopped, turned, and fired the gun were not disclosed and the State claims that such details were not part of the witness's statement. We need not decide whether the State violated Rule 412 because the record fails to show defendant was prejudiced or surprised by the alleged violation. In deciding prejudice, surprise and whether a discovery violation warrants a new trial for a criminal defendant, a reviewing court considers "the closeness of the evidence, the strength of the undisclosed evidence, the likelihood that prior notice could have helped the defense discredit the evidence, and the willfulness of the State in failing to disclose the new evidence." *Robinson*, 157 Ill. 2d at 81. Further, a "defendant's failure to request a continuance upon learning of a discovery violation is a relevant factor to consider in determining whether the new evidence prejudiced the defendant." *People v. Heard*, 187 Ill. 2d 36, 63 (1999). Defendant did not request a continuance to investigate Taufique's testimony further, nor is the evidence in this case close. Taufique's testimony was put forth by the State to rebut and discredit defendant's testimony that in shooting the gun, he did so while running and pointing the gun backwards. Taufique's testimony could not have been a surprise to defendant because the State had already put forth evidence consistent with Taufique's testimony that the shooter stopped, turned, and then fired the gun as opposed to defendant's testimony that he held the gun behind his body and fired. Both Officer Komo's testimony and Torrey Davis's written statement, as testified to by ASA Jakubiak, had already shown that defendant stopped, turned, and then fired the gun. Officer Komo testified that he saw defendant turn around, reach in his waistband, and then produce a gun. He testified that defendant was then facing him when he fired it. Davis stated to ASA Jakubiak that after Buckaroo asked defendant "Why are you running, don't you got the banger" defendant pulled the gun out of his pocket, stopped, and turned around. Taufique's testimony could not have surprised defendant as the State had already offered evidence consistent with Taufique's testimony in regard to his body position when he fired the gun. Taufique's testimony was put forth to impeach defendant's testimony, not to surprise defendant with new evidence of the positioning of his body as he fired the gun.

¶ 28 Defendant had prior notice from the State that Taufique was an eyewitness. Before trial the State informed defendant that Taufique was in her store and saw the incident and the shooting as it occurred, but that she could not identify the shooter she observed. Defense counsel had the opportunity to impeach Taufique's credibility. It is unlikely that prior

knowledge consisting of a specific statement that Taufique observed the shooter stopped, turned, and shooting would have helped discredit the evidence. Finally, defendant has not shown how the State was willful in not disclosing Taufique's observation of the shooter stopped, turned, and shooting. The record shows the State disclosed Taufique as a witness and that she saw a person shooting in front of her store. The State did not seek to surprise or trick defendant by calling Taufique to testify. Defendant has not carried his burden of proving prejudice.

¶ 29                                  Plain Error Doctrine

¶ 30        Defendant admits that he did not properly preserve certain issues for appeal, but urges this court to excuse his procedural default and address these claims on the merits. We may review defendant's arguments on their merits only if he sustains his burden of persuasion on either of the two prongs of the plain error doctrine. *People v. Herron*, 215 Ill. 2d 167, 187 (2005). Our supreme court has described the plain error doctrine as a "narrow and limited exception." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). The plain error doctrine allows this court to review a forfeited claim of error that affects a substantial right in two instances: "where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence" or "where the error is so serious that the defendant was denied a substantial right, and thus a fair trial." *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005); see also Ill. S. Ct. R. 615(a) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."). Before we address whether defendant's claims satisfy either prong of the plain error doctrine, defendant "must first show that a clear or obvious error occurred." *Hillier*, 237 Ill. 2d at 545.

¶ 31                   Testimony of Rebuttal Witness Terrell Durham

¶ 32        Defendant argues the trial court abused its discretion by allowing the State to present the rebuttal testimony of Terrell Durham. Defendant contends that Durham's testimony was irrelevant because the incident he testified to occurred seven hours earlier than the one in question, there was no commonality between the victims and because it lacked a threshold similarity to the later shooting. Defendant argues further that even if it was relevant, it was highly prejudicial.

¶ 33        Evidence of other offenses is not admissible to show a defendant's propensity to commit a crime. *People v. Lindgren*, 79 Ill. 2d 129, 137 (1980). However, if the evidence of other offenses is relevant, it can be introduced for any purpose other than to show defendant's propensity to commit criminal acts. *People v. Illgen*, 145 Ill. 2d 353, 365 (1991). Evidence of other offenses is admissible when "relevant to prove *modus operandi*, intent, identity, motive or absence of mistake." *Id.* at 364-65. Further, where other crimes evidence is "admitted to show intent or lack of accident, mere general areas of similarity are sufficient." *People v. Young*, 381 Ill. App. 3d 595, 601 (2008); *People v. LeCour*, 273 Ill. App. 3d 1003, 1008-09 (1995) ("Where other crimes are offered to prove a defendant's

criminal intent, they need not possess the same level of similarity to the offense at bar as is required when offered to prove *modus operandi.*").

¶ 34 In deciding whether to allow such evidence, the trial court must weigh the probative value of the other offense evidence against the prejudicial effect of that evidence. *Illgen*, 145 Ill. 2d at 365. If the probative value of the evidence is outweighed by its prejudicial effect, the trial court should exclude the evidence. *Id.* However, the trial court may admit rebuttal evidence "where the evidence tends to explain, repel, contradict or disprove the evidence of the defendant." *People v. Daugherty*, 43 Ill. 2d 251, 255 (1969). Whether evidence is admitted at trial is a matter within the discretion of the trial court, and, therefore, we will not reverse the trial court's decision absent an abuse of that discretion. *Illgen*, 145 Ill. 2d at 364.

¶ 35 In this case, the testimony of Terrell Durham was admitted in rebuttal. Defendant testified that he was not in the area, nor did he have any contact with Terrell Durham, on the morning of the incident. Prior to its admittance, the State argued that Durham's testimony would contradict defendant's testimony on that point. The trial court allowed the evidence, ruling the State could bring in the testimony to show motive, intent and absence of mistake. The trial court also instructed the jury that Durham's testimony should be considered for the limited purposes of intent, motive, and lack of mistake.

¶ 36 We agree with the trial court that Durham's testimony was not brought in to show defendant's propensity to commit criminal acts but, rather, was properly admitted to show motive, intent and absence of mistake. *Illgen*, 145 Ill. 2d at 364-65. It is also clear from the record that the trial court weighed the probative value of Durham's testimony against its prejudicial effect before allowing it. The trial court found its probative value outweighed any prejudicial effect because it impeached defendant's testimony. Durham's testimony is proper rebuttal testimony because it contradicts defendant's testimony that he was not in the area of the incident in the morning and that he did not make contact with Durham. *Daugherty*, 43 Ill. 2d at 255 (trial court may admit rebuttal evidence "where the evidence tends to explain, repel, contradict or disprove the evidence of the defendant"). Based on our review of the record, we cannot say the trial court abused its discretion in admitting the rebuttal testimony of Terrell Durham. Because defendant cannot show error, the plain error doctrine is not applicable. *Hillier*, 237 Ill. 2d at 545 (before proceeding under either prong of the plain error doctrine, defendant "must first show that a clear or obvious error occurred").

¶ 37 Closing Arguments

¶ 38 Defendant next contends the State made several comments during closing and rebuttal closing argument that were improper. Initially, we note that due to an apparent conflict between two Illinois Supreme Court cases, *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007), and *People v. Blue*, 189 Ill. 2d 99, 128 (2000), it is not clear what the proper standard of review is when reviewing improper remarks made during closing arguments. *People v. Raymond*, 404 Ill. App. 3d 1028, 1059-60 (2010) (stating that in *Wheeler,* the supreme court utilized a *de novo* standard of review, but that in numerous other supreme court cases, including *Blue*, the court applied an abuse of discretion standard). However, as this court found in *Raymond*, we need not determine the proper standard of review in this case because

-10-

here the result would be the same under either a *de novo* or an abuse of discretion standard of review. *Raymond*, 404 Ill. App. 3d at 1060 (noting that this was the same approach taken by this court in *People v. Phillips*, 392 Ill. App. 3d 243, 275 (2009), *People v. Johnson*, 385 Ill. App. 3d 585, 603 (2008), and *People v. Robinson*, 391 Ill. App. 3d 822, 840 (2009)).

¶ 39    First, defendant argues that the following statement by the prosecutor, during closing arguments, was inflammatory.

"The evidence has proven the defendant guilty beyond a reasonable doubt. And justice demands you find defendant guilty. Not just the evidence, but justice. And I'm not talking about justice for Officer Trevino. I'm talking about justice for every high schooler or child that was out on that street. For every shop owner, for every patron, for every motorist on Division Street. For everyone, so that we can be free and safe from this gang garbage on our city streets. We are asking for justice for all."

¶ 40    Next, defendant argues that the prosecutor, during rebuttal closing arguments, improperly argued that the credibility of the witness was enhanced because he was a police officer.

"So let's continue with the defendant's story. How can a shot, six shots fired like this, possibly shoot Lee Trevino in the arm. To believe that, you will absolutely have to believe that Mike Komo came in here and lied to you. So let's think about that for a minute. Why would Mike Komo lie to you. Why. His partner was shot. To believe Mike Komo would come in here and lie, you would have to believe that Mike Komo wants the wrong person convicted of this offense and wants the correct person running free. The person who actually shot his partner. What logic or sense does that make? Why would Mike Komo do such a thing?

The use of force must be necessary to prevent imminent death or great bodily harm. To understand why self defense is ridiculous, you really have to take it to its logical conclusion. He is in a gang fight with other gangs. We all know gangs are bad. Okay. Nobody's going to sit here and tell you anything different. Most if not all shootings in the city are occurring because of gang fights. If it is enough to simply come in at the day of trial and invent a fictitious person and say someone was out there with a gun, then there can be absolutely no convictions in any gang fight, any time, anywhere. *** The question is, is there anything that corroborates it."

¶ 41    Defendant's final contention is that during rebuttal closing arguments, the following comments made by the prosecutor distorted the burden of proof.

"The defendant is presumed innocent. The defendant is not presumed truthful. When he takes the stand, you view his testimony, compared to the evidence, in the same way as you view all the other testimony. You compare it, contrast it and you compare the credibility."

¶ 42    In making a closing argument, a prosecutor is given a great deal of latitude. *People v. Pasch*, 152 Ill. 2d 133, 184 (1992). The prosecutor "has [the] right to comment on the evidence and draw all legitimate inferences deducible therefrom, even if they are unfavorable to the defendant." *Id.* We must look at the entire argument and view any alleged erroneous comments within the context that they were made. *Blue*, 189 Ill. 2d at 128. Closing

arguments are improper if they serve no other purpose except to inflame the jury. *Id.* It is also improper for a prosecutor to argue that a police officer's testimony is more credible based on the status of being a police officer. *People v. Adams*, 403 Ill. App. 3d 995, 1002 (2010). A prosecutor may, however, "comment unfavorably on the evil effects of the crime and urge the jury to administer the law without fear, when such argument is based upon competent and pertinent evidence." *People v. Nicholas*, 218 Ill. 2d 104, 121-22 (2005). Further, "[a]lthough the prosecutor's remarks may sometimes exceed the bounds of proper comment, the verdict must not be disturbed unless it can be said that the remarks resulted in substantial prejudice to the accused, such that absent those remarks the verdict would have been different." *People v. Byron*, 164 Ill. 2d 279, 295 (1995). Improper comments by the prosecutor themselves will not warrant reversal unless those comments were a material factor in convicting the defendant. *Wheeler*, 226 Ill. 2d at 123. Additionally, a significant factor in reviewing the impact of a prosecutor's allegedly improper comments on a jury verdict is whether the comments were isolated and brief within the context of a lengthy closing argument. *People v. Runge*, 234 Ill. 2d 68, 142 (2009).

¶ 43 Our review of the entire closing and rebuttal closing argument, as well as placing the complained-of comments in their proper context, shows defendant cannot meet his burden of showing substantial prejudice. We disagree with defendant that the prosecutor argued during rebuttal closing argument that Officer Komo's status as a police officer entitled him to greater credibility. *Adams*, 403 Ill. App. 3d at 1002. Our review of the complained-of comment in its entirety shows that at no time did the prosecutor argue that Officer Komo was more credible because he is a police officer.

¶ 44 We also disagree that the prosecutor during rebuttal closing argument distorted the burden of proof. Our review of the comment in its entirety shows that the State did argue the proper standard of review, that a defendant is presumed innocent. After the complained-of remark, the State commented that "you view [defendant's] testimony, compared to the evidence, in the same way as you view all the other testimony. You compare it, contrast it and you compare the credibility." We disagree with defendant's contention and do not think the comment is an improper remark on the State's burden of proof in a criminal matter.

¶ 45 The prosecutor's comments during closing arguments regarding "justice" may have been improper. However, we need not decide that, as we cannot say that this comment was a material factor in defendant's conviction. *Wheeler*, 226 Ill. 2d at 123. The comment was brief and isolated, made in the context of a lengthy closing argument by the State. *Runge*, 234 Ill. 2d at 142. The State's closing argument was over 20 pages of transcript, and this was the only alleged improper remark. This is also true as to the complained-of comment during rebuttal closing argument regarding gang violence across the city. Although it may not have been proper, it was brief and isolated in the midst of a rebuttal closing argument that was also over 20 pages of the transcript. *Id.* at 142. Our review of both the closing and rebuttal closing arguments shows that we cannot say that defendant's verdict would have been different had the prosecutor not commented on justice or general gang violence. *Byron*, 164 Ill. 2d at 295. Defendant has thus not shown that he was substantially prejudiced. *Id.* Defendant failed to object to these alleged errors and a review of his claim under the plain error doctrine is inapplicable.

¶ 46                                    Illinois Supreme Court 431(b)

¶ 47          Defendant next argues that the trial court failed to comply with Illinois Supreme
Court Rule 431(b) in its *voir dire* of prospective jurors. Ill. S. Ct. R. 431(b) (eff. May 1,
2007). Defendant admits that this issue was not properly preserved for appeal, but in his
opening brief urged this court to excuse his procedural default and address his claim on the
merits under the second prong of the plain error doctrine. During the pendency of this case,
the Illinois Supreme Court decided *People v. Thompson*, 238 Ill. 2d 598 (2010). *Thompson*
held that a violation of Rule 431(b) does not automatically constitute a structural error
subject to reversal. *Id.* at 608. In *Thompson*, our supreme court concluded the defendant had
not carried his burden of persuasion under the second prong of plain error review because
the defendant had not presented any evidence of a biased jury. *Id.* at 614. In his reply brief,
defendant conceded the issue, stating "[b]ecause [defendant] is not arguing that his jury was
biased based on the trial court's noncompliance with Rule 431(b), he does not persist in his
plain error argument under the second prong."


¶ 48                                         Presentence Credit

¶ 49          Defendant's final argument is that he is entitled to an additional seven days of
presentence credit and, thus, this court must instruct the circuit court to correct the mittimus
to reflect the proper presentence credit. The trial court ordered defendant be credited 847
days of presentence credit. The State concedes defendant is entitled to 854 days of
presentence credit. We agree with the parties. Defendant's mittimus shall be corrected to
reflect 854 days of presentence credit.


¶ 50                                           CONCLUSION

¶ 51          For the foregoing reasons, the judgment of the circuit court of Cook County is
affirmed and the mittimus corrected.

¶ 52          Affirmed; mittimus corrected.